2012 Ark. 352

**Jerry COX, Larry Page, Bill Wheeler, and Dr. William H. Benton, individually and on behalf of Coalition to Preserve Arkansas Values, Petitioner**

**v.**

**Mark MARTIN, in his capacity as Secretary of State, Respondent.**

**v.**

**Daniel Hankins and Melissa Fults, individually and on behalf of Arkansans for Compassionate Care, Intervenors.**

No. 12–740.

Supreme Court of Arkansas.

Sept. 27, 2012.

78

Stewart Law Firm, by: Chris H. Stewart, for petitioners.

A.J. Kelly, Deputy Secretary of State, and Martha Adcock, Associate Counsel, for respondent.

David A. Couch, PLLC, by: David A. Couch, for intervenors.

KAREN R. BAKER, Justice.

Petitioners, Jerry Cox, Larry Page, Bill Wheeler, and Dr. William H. Benton, Individually, and on Behalf of Coalition to Preserve Arkansas Values ("CPAV"), bring this original action requesting this court to review the legal sufficiency of the popular name and ballot title of the Arkansas Medical Marijuana Act ("the Act"). CPAV requests this court to declare the popular name and ballot title of the Act legally insufficient, and hold that, if enacted, the Act will conflict with the state and federal constitutions and would violate state and federal law. Further, CPAV asks this court to remove the Act from the November 6, 2012 ballot. We hold that the Act's popular name and ballot title are legally sufficient and deny CPAV's petition.

This court has original jurisdiction of this case pursuant to Ark. Sup.Ct. R. 6–5(a) (2011). Rule 6–5(a) provides that this court has original jurisdiction in "extraordinary actions required by law, such as suits attacking the validity of statewide petitions filed under Amendment 7 of the Arkansas Constitution." Amendment 7 is codified in article 5, § 1 of the Arkansas Constitution and is referred to as Amend-

ment 7. Ark. Const. art. 5, § 1, (amended by amend. 7).

This is an original action challenging the legal sufficiency of the Act's popular name and ballot title. Intervenors, Arkansans for Compassionate Care ("ACC"), is the sponsor and Ballot Question Committee of the Act. The Act purports to authorize the use of marijuana for medical purposes. As the sponsor, ACC first submitted the Act to the Attorney General for certification on February 11, 2011, and then again on March 16, 2011. After revisions were made, on April 18, 2011, the Attorney General substituted a revised popular name and ballot title for the Act. On that same day, the Attorney General notified ACC of the certification and also notified the Secretary of State of the certification. In accordance with Arkansas Code Annotated § 7–9–107 (Supp.2011), and article 5, § 1 of the Arkansas Constitution, the Secretary of State published the name, ballot title, and full text of the Act within ten days of the Attorney General's certification. Subsequent to the publication, ACC circulated its petitions for signatures. On August 22, 2012, the Secretary of State notified ACC that the popular name and ballot title met the necessary signature requirements of article 5, section 1, and therefore, certified the popular name and ballot title to be placed on the November 6, 2012 ballot. On August 31, 2012, CPAV filed its petition requesting that this court review the legal sufficiency of the Act, the popular name, and the ballot title, it also filed a motion to expedite the petition. On September 4, 2012, ACC filed a motion intervene. On September 5, 2012, the Secretary of State responded to the petition; ACC also responded on September 5, 2012. On September 6, 2012, this court granted the motion to intervene and CPAV's motion to expedite the case. On September 7, 2012, the Intervenors filed a motion to amend the scheduling order to allow a reply brief and to request oral argument. On September 13, 2012, we denied the request for oral argument and motion to file a reply brief. On September 13, 2012, ACC filed a motion to dismiss, or in the alternative, a motion to reconsider the order denying the motion to amend the scheduling order to allow a reply brief and/or request for oral argument. On September 19, 2012, CPAV filed a response to ACC's motion to dismiss, motion to reconsider, and request for oral argument.

The text of the popular name and ballot title of the Act is as follows:

Popular Name

The Arkansas Medical Marijuana Act

Ballot Title

AN ACT MAKING THE MEDICAL USE OF MARIJUANA LEGAL UNDER ARKANSAS STATE LAW, BUT ACKNOWLEDGING THAT MARIJUANA USE, POSSESSION, AND DISTRIBUTION FOR ANY PURPOSE REMAIN ILLEGAL UNDER FEDERAL LAW; ESTABLISHING A SYSTEM FOR THE CULTIVATION, ACQUISITION AND DISTRIBUTION OF MARIJUANA FOR QUALIFYING PATIENTS THROUGH NONPROFIT MEDICAL MARIJUANA DISPENSARIES AND GRANTING THOSE NONPROFIT DISPENSARIES LIMITED IMMUNITY; ALLOWING LOCALITIES TO LIMIT THE NUMBER OF NONPROFIT DISPENSARIES AND TO ENACT REASONABLE ZONING REGULATIONS GOVERNING THEIR OPERATIONS; PROVIDING THAT QUALIFYING PATIENTS, THEIR DESIGNATED CAREGIVERS AND NONPROFIT DISPENSARY

AGENTS SHALL NOT BE SUBJECT TO CRIMINAL OR CIVIL PENALTIES OR OTHER FORMS OF DISCRIMINATION FOR ENGAGING IN OR ASSISTING WITH THE PATIENTS' MEDICAL USE OF MARIJUANA; AUTHORIZING LIMITED CULTIVATION OF MARIJUANA BY QUALIFYING PATIENTS OR DESIGNATED CAREGIVERS IF A QUALIFYING PATIENT LIVES MORE THAN FIVE MILES FROM THE NEAREST NONPROFIT DISPENSARY; AUTHORIZING COMPENSATION FOR DESIGNATED CAREGIVERS; REQUIRING THAT IN ORDER TO BECOME A QUALIFYING PATIENT, A PERSON SUBMIT TO THE STATE A WRITTEN CERTIFICATION FROM A PHYSICIAN THAT HE OR SHE IS SUFFERING FROM A QUALIFYING MEDICAL CONDITION; ESTABLISHING AN INITIAL LIST OF QUALIFYING MEDICAL CONDITIONS; DIRECTING THE DEPARTMENT OF HEALTH TO ESTABLISH RULES RELATED TO THE PROCESSING OF APPLICATIONS FOR REGISTRY IDENTIFICATION CARDS, THE OPERATIONS OF NONPROFIT DISPENSARIES, AND THE ADDITION OF QUALIFYING MEDICAL CONDITIONS IF SUCH ADDITIONS WILL ENABLE PATIENTS TO DERIVE THERAPEUTIC BENEFIT FROM THE MEDICAL USE OF MARIJUANA; SETTING MAXIMUM REGISTRATION FEES FOR NONPROFIT DISPENSARIES; ESTABLISHING QUALIFICATIONS FOR REGISTRY IDENTIFICATION CARDS; ESTABLISHING STANDARDS TO ENSURE THAT QUALIFYING PATIENT AND DESIGNATED CAREGIVER REGISTRATION INFORMATION IS TREATED AS CONFIDENTIAL; DIRECTING THE DEPARTMENT OF HEALTH TO PROVIDE THE LEGISLATURE ANNUAL QUANTITATIVE REPORTS ABOUT THE MEDICAL MARIJUANA PROGRAM; SETTING CERTAIN LIMITATIONS ON THE USE OF MEDICAL MARIJUANA BY QUALIFYING PATIENTS; ESTABLISHING AN AFFIRMATIVE DEFENSE FOR THE MEDICAL USE OF MARIJUANA; ESTABLISHING REGISTRATION AND OPERATION REQUIREMENTS FOR NONPROFIT DISPENSARIES; SETTING LIMITS ON THE AMOUNT OF MARIJUANA A NONPROFIT DISPENSARY MAY CULTIVATE AND THE AMOUNT OF MARIJUANA A NONPROFIT DISPENSARY MAY DISPENSE TO A QUALIFYING PATIENT; PROHIBITING CERTAIN CONDUCT BY AND IMPOSING CERTAIN CONDITIONS AND REQUIREMENTS ON PHYSICIANS, NONPROFIT DISPENSARIES, NONPROFIT DISPENSARY AGENTS, QUALIFYING PATIENTS, AND DESIGNATED CAREGIVERS; ESTABLISHING A LIST OF FELONY OFFENSES WHICH PRECLUDE CERTAIN TYPES OF PARTICIPATION IN THE MEDICAL MARIJUANA PROGRAM; AND ALLOWING VISITING QUALIFYING PATIENTS SUFFERING FROM QUALIFYING MEDICAL CONDITIONS TO UTILIZE THE ARKANSAS MEDICAL MARIJUANA PROGRAM.

## I. Legal Sufficiency of the Ballot Title

The first issue before the court is whether the ballot title is legally sufficient.

We have explained, "our decisions upon the sufficiency of ballot titles have been so numerous that the governing principles are perfectly familiar. On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. We have recognized the impossibility of preparing a ballot title that would suit every one. Yet, on the other hand, the ballot title must be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and it must not be tinged with partisan coloring." *Bradley v. Hall*, 220 Ark. 925, 927, 251 S.W.2d 470, 471 (1952) (internal citations omitted).

The applicable standard of review for ballot title cases requires that "ballot titles must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law." *Parker v. Priest*, 326 Ark. 123, 129, 930 S.W.2d 322, 325 (1996). The ballot title must be (1) intelligible, (2) honest, and (3) impartial. *Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002). "However, this court is neither to interpret a proposed amendment nor discuss its merits or faults." *Id.* at 359, 86 S.W.3d at 891 (internal citations omitted). The ballot title is sufficient if it "informs the voters with such clarity that they can cast their ballot with a fair understanding of the issue presented." *Ferstl v. McCuen*, 296 Ark. 504, 509, 758 S.W.2d 398, 400 (1988) (internal citations omitted).

In addition, when reviewing a challenge to the ballot title, this court recognizes that amendment 7 of article 5, § 1 "places the burden upon the party challenging the ballot title to prove that it is misleading or insufficient." *Cox v. Dan-*

*iels*, 374 Ark. 437, 444, 288 S.W.3d 591, 595 (2008) (internal citations omitted). Applying these standards, we review CPAV's five separate challenges to the ballot title.

## A. Length

CPAV first asserts that, at 384 words, the ballot title is legally insufficient because it is too long, and the voters will not have adequate time in the voting booth to be reasonably advised on the impact of the Act, thereby failing to inform the voters of the scope of the Act. CPAV also asserts that the ballot title is too short, and its brevity fails to adequately inform voters of the scope of the Act.

When reviewing the ballot title, it must be "complete enough to convey an intelligible idea of the scope and import of the proposed law." *Ward*, 350 Ark. at 359, 86 S.W.3d at 884. The ballot title's length is a consideration, but it is not a determining factor on the legal sufficiency of a ballot title. *Parker*, 326 Ark. 123, 930 S.W.2d 322. "Likewise, there is no restriction on the length of a proposed amendment." *Crochet v. Priest*, 326 Ark. 338, 931 S.W.2d 128 (1996) (internal citations omitted). Further, this court has declined to hold a ballot title insufficient on length alone, but length is one factor for the court to consider in determining the sufficiency of the ballot title. *Id.*; see *Walker v. Priest*, 342 Ark. 410, 29 S.W.3d 657 (2000) (994 word ballot title was approved). This court recognizes, "although Amendment 7 to the Arkansas Constitution does not specify a limit on the length of a proposal, the proposed measure must be of a size capable of having a ballot title which will not only convey the scope and import of the measure, but also impart a description of the proposal so voters can cast their votes intelligently and with a fair understanding on the issue." *Walker*, 342 Ark. at 417, 29 S.W.3d at 659.

Here, after reviewing the ballot title of 384 words, we conclude that the title informs the voters in an intelligible, honest, and impartial manner of the substantive matter of the Act. The ballot title is not unduly long, nor is it complex or misleading. Therefore, we hold the ballot title here is not legally insufficient based on its length.

## B. Lack of Definitions and Misleading Terms

Second, CPAV asserts that the ballot title's language is ambiguous and does not define key terms for the voter. CPAV asserts the following terms have not been defined for the voter, making the ballot title unfair and incomplete: "medical use," "qualifying medical condition," "dispensaries," "cultivation," "acquisition," "distribution," "medical uses," and "medical condition."

When reviewing a ballot title, the title must be (1) intelligible, (2) honest, and (3) impartial. *Ward,* 350 Ark. 345, 86 S.W.3d 884. It is not necessary that a ballot title include every detail of an amendment. *May v. Daniels,* 359 Ark. 100, 194 S.W.3d 771 (2004). "A ballot title is sufficient if it recites the general purposes of the proposed law and if the ballot title contains enough information to sufficiently advise voters of the true contents of the proposed law." *Ward,* 350 Ark. at 359, 86 S.W.3d at 891. This court's "task is not to require nor draft the perfect proposed popular name and ballot title, but merely to determine if those presented are legally sufficient." *Becker v. Riviere,* 270 Ark. 219, 226, 604 S.W.2d 555, 558 (1980). Applying the law to the Act's ballot title, it is clear that the ballot title thoroughly informs the voters of the subject matter and scope of the Act in an intelligible, honest, and impartial manner. Although CPAV asserts that terms must be defined

in the ballot title of the Act, we disagree. A ballot title need not define every single term. *May,* 359 Ark. at 111, 194 S.W.3d at 780. CPAV has not met its burden of proving that the ballot title is misleading or insufficient.

## C. Omission of Key Words and Phrases

CPAV next asserts that the ballot title is legally insufficient because it omits key words. Specifically, CPAV asserts that the omitted words are words ACC should have used. CPAV argues that the ballot title should be held legally insufficient because ACC did not select the specific words that CPAV asserts should be in the title. Stated differently, CPAV contends that ACC's choice of words qualifies as an omission of words and renders the title legally insufficient. CPAV also asserts that ACC drafted the ballot title and selected words to mislead voters and disguised key words.

Similar to its first argument in the preceding section, CPAV asserts that the following terms were omitted or disguised in the ballot title and render the title legally insufficient: "cultivation," "acquisition," "distribution," and "designated caregiver." CPAV argues that the drafters of the ballot title should have used terms that would be more readily known to voters. CPAV also asserts the terms used are misleading.

In considering the omission of terms from a ballot title, we note that a ballot title "cannot omit material information that would give the voters serious ground for reflection. It is required that the title be complete enough to convey an intelligible idea of the scope and import of the proposed law.... Thus, the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the

ballot title." *Cox v. Daniels,* 374 Ark. 437, 443, 288 S.W.3d 591, 595 (2008). However, the ballot title is not required to include every detail, term, definition, or how the law will work. *May,* 359 Ark. at 111, 194 S.W.3d at 780.

Here, CPAV's argument is that an omission occurred when ACC did not use CPAV's suggested terms. CPAV argues that ACC should have selected different terms to use in the Act, and omission of CPAV's suggested words makes the ballot title legally insufficient. We disagree. Additionally, CPAV further asserts that the terms used in the ballot title are misleading. Having reviewed the title, and recognizing again that the title is not required to include every detail, term, definition, or how the law will work, it is clear that the title is not deficient for failing to use CPAV's suggested terms. *May,* 359 Ark. at 111, 194 S.W.3d at 780. The ballot title at issue thoroughly addressed the substantive matters of the Act, from the general purpose of the Act to the establishment of a regulation and maintenance system. The title conveys to the voters information upon which they can step into the voting booth, read the title, and make an informed decision. After reviewing the ballot title, we hold that the voters will have a fair understanding of the terms used and the ballot title is not misleading.

### D. Fair Understanding of the Impact of the Act

CPAV next asserts that the ballot title is legally insufficient because it "omits key provisions of the Act that would give the voter serious grounds for reflection." CPAV makes another omission argument, alleging that key terms were not defined. CPAV also alleges the ballot title does not inform the voter of the impact of the Act because the title does not adequately explain the details of legal immunity for pos-

session of marijuana under the Act. This includes, among other things, detailing a minor's ability to obtain marijuana for medical purposes; child-custody ramifications; the number of caregivers; and the caregiver's role.

Here, again, the title must not include every detail from the Act. In *May,* we held that "it is not necessary that a ballot title include every possible consequence or impact of a proposed measure." In *Ferstl,* this court stated unequivocally: "Certainly not every detail of an amendment or how it will work in every situation can be revealed in the name and title. It is not possible to do so." *Id.,* 296 Ark. at 510, 758 S.W.2d at 401. More recently, this court has reiterated: "The [ballot] title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke." *May,* 359 Ark. at 111, 194 S.W.3d at 780 (internal citations omitted). Here, the ballot title clearly provides the purpose and scope of the Act and need not provide details on how every law may be affected by the Act. Thus, CPAV has not met its burden of proving that the ballot title is misleading or insufficient.

### II. *Legal Sufficiency of the Popular Name*

CPAV's second point on appeal is that the popular name of the Act is legally insufficient because it uses partisan catch phrases, is misleading, and uses invalid terms under Arkansas law.

The role of the popular name, is to serve "the constitutional requirement of submission in a manner enabling the voters to vote on the proposed amendments separately. We have said that [the popular name] is a device useful to facilitate voter discussion prior to election, but that it need not contain detailed informa-

tion or include exceptions which might be required of a ballot title." *Chaney v. Bryant*, 259 Ark. 294, 297, 532 S.W.2d 741, 743 (1976). The purpose of a popular name is to identify the proposal before the election. *Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000). The popular name "is not held to the same stringent standards and need not be as explicit as a ballot title; however, it cannot contain catch phrases or slogans that tend to mislead or give partisan coloring to a proposal." *Ward*, 350 Ark. 345, 359, 86 S.W.3d 884, 891. Thus, the popular name must be intelligible, honest, and impartial. *Id.*

Here, the popular name presented to this court for review is "Arkansas Medical Marijuana Act." CPAV asserts that the popular name is legally insufficient because it is misleading, filled with partisan terms, and uses invalid legal terms under Arkansas law. Specifically, CPAV asserts that the popular name is legally insufficient because (1) "medical marijuana" does not exist, (2) the popular name itself is a partisan phrase and the topic is being debated nationwide, and (3) the use of the term "medical" will cause very few voters to vote against the Act.

This court is "bound to examine the popular name to determine whether it sufficiently conveys an intelligible idea of the scope and import of the proposed amendment; and whether it contains any misleading language or partisan coloring." *Ferstl*, 296 Ark. at 508, 758 S.W.2d at 400. Here, the popular name, "Arkansas Medical Marijuana Act," consists of four words. Each word is one that the voters are familiar with, commonly use, understand, and the words are presented in an intelligible, honest, impartial manner. The terms explain to voters the topic of the proposal: medicinal use of marijuana. We disagree with CPAV's assertion that the popular name is misleading, partisan, or defective, and hold that the popular name is legally sufficient.

## III. Potential Violation of State and Federal Constitutions and Invalidation of State and Federal Laws

For its third point, CPAV asserts that the Act, if enacted, would both violate the Arkansas and the United States Constitutions, and would also invalidate state and federal laws. The Secretary of State and ACC both assert that CPAV's challenge is directed at the substance of the Act, not the popular name and ballot title, and is therefore not ripe for review. Further, the Secretary of State and ACC assert that if this court reviews CPAV's claim as a procedural challenge to the popular name and ballot title, the Act does not clearly conflict with the state and federal constitutions.

We will not entertain substantive challenges to a proposed measure. In *Donovan v. Priest*, we distinguished between substantive constitutional challenges and procedural constitutional challenges. 326 Ark. 353, 931 S.W.2d 119 (1996). We held that "our review of the sufficiency of a proposed measure, as provided for in Amendment 7, includes a review of whether the measure's proponents are entitled to invoke the direct initiative process when such issue is properly presented." *Id.* at 360, 931 S.W.2d at 122. In *Donovan*, we held that we will not "entertain substantive constitutional challenges to a proposed measure, such as whether it violates the free speech provision of the First Amendment, before an election has been held." *Id.* We went on to distinguish "such substantive constitutional challenges from procedural challenges in that the former necessarily involve fact-specific issues and thus are not ripe for review until the proposed measure becomes law and a case in controversy arises." *Id.* We explained

that "the pertinent issue in cases such as this one is not the hypothetical question whether the law, if passed, would be constitutionally defective; rather, it is the present and ripe question whether the measure's proponents are entitled to invoke the direct legislation process at all." *Id.* at 359, 931 S.W.2d at 121 (internal citations omitted). This court reviews such challenges, but limits such review to situations where the proposed measure was "clearly contrary to law" and, therefore, should not be submitted to the electorate. *Kurrus v. Priest,* 342 Ark. 434, 29 S.W.3d 669 (2000). As such, we will not review the substantive challenge to the Act as the issues are not ripe for review, but will review the Act to determine if it is clearly contrary to the law.

Here, CPAV asserts several constitutional defects in the Act itself rather than in the popular name and ballot title. Specifically, CPAV asserts that, if passed, the Act is clearly contrary to (1) article 2, section 17 of the Arkansas Constitution and article 1 section 10 of the United States Constitution (prohibits passage of a law that will impair obligation of contracts); (2) article 2, section 15 of the Arkansas Constitution protecting persons from searches and seizures; and would violate the Fourth Amendment to the United States Constitution. CPAV also asserts that, if passed, the Act will invalidate several laws such as (1) the Arkansas Medical Practice Act and (2) Arkansas Code Annotated § 5–64–101, which prohibits use, possession, or cultivation and delivery of marijuana.

We have reviewed the parties' motions and pleadings regarding the Act's constitutionality, and we are constrained to examine only whether the Act will be clearly contrary to the Arkansas and United States Constitutions. However, CPAV has asked this court to hold the Act uncon-

stitutional based on hypothetical scenarios that may occur in the future, if the Act becomes a law. We decline to do so. After reviewing the Act and CPAV's arguments, we hold that CPAV has failed to meet its burden to demonstrate that the Act clearly conflicts with any constitutional provision. Further, CPAV has not provided evidence that the Act is clearly contrary to any state and federal laws, as it bases its assertions on situations that may arise, if the law is passed, not language that is clearly contrary to either the constitutions or state and federal law. Therefore, we deny CPAV's final claim.

In conclusion, having reviewed the entirety of the parties' briefs and arguments, we hold that the popular name and ballot title are an intelligible, honest, and impartial means of presenting the Act to the people for their consideration. We hold that it is an adequate and fair representation without misleading tendencies or partisan coloring. Therefore, the Act is proper for inclusion on the ballot at the general election on November 6, 2012, and the petition is therefore denied. As such, ACC's motion to dismiss, or in the alternative, motion to reconsider the order denying the motion to amend the scheduling order to allow a reply brief and/or request for oral argument is denied as moot. The mandate herein will issue within five days from the filing of this opinion unless a petition for rehearing is filed.