SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CV-16-756

| | |
|---|---|
| MELANIE CONWAY, M.D., INDIVIDUALLY AND ON BEHALF OF ARKANSANS AGAINST LEGALIZED MARIJUANA<br><br>PETITIONER | Opinion Delivered September 22, 2016 |
| V. | |
| MARK MARTIN, SECRETARY OF STATE<br><br>RESPONDENT | |
| ARKANSANS FOR COMPASSIONATE CARE 2016<br><br>INTERVENOR | PETITION DENIED; INTERVENOR'S MOTION TO DISMISS MOOT. |

**JOSEPHINE LINKER HART, Associate Justice**

Petitioner, Dr. Melanie Conway, both individually and on behalf of Arkansans Against Legalized Marijuana, brings this original action challenging the legal sufficiency of the ballot title of the initiated act, The Arkansas Medical Cannabis Act (hereinafter, the "Act"). Conway argues that (1) the ballot title falsely states that the Act limits the use of marijuana when in fact there is no limit on the amount of marijuana that patients may legally use; (2) the ballot title falsely states that the number of "cannabis care centers," as defined in the Act, will be limited when in fact the number is potentially unlimited; (3) the ballot title gives the false impression that all marijuana will be tested for quality, safety, and potency when in fact home-grown marijuana is not required to be tested; (4) the ballot title fails to state that the Act permits

cannabis care centers to sell food and drink that contain marijuana; (5) the ballot title is incomplete and misleading with regard to the effect of the Act on employers, landlords, churches, and schools; (6) the ballot title uses partisan coloring in order to appeal to the compassionate and sympathetic instincts of voters. Conway asks the court to enjoin the respondent, Secretary of State Mark Martin, from certifying any votes cast for the Act at the general election. Also, Arkansans for Compassionate Care 2016 (hereinafter, "ACC") filed a motion seeking to intervene in this action in support of the Act's ballot title.

This court has original jurisdiction in this case because it is a "suit[ ] attacking the validity of statewide petitions filed under Amendment 7 of the Arkansas Constitution." Ark. Sup. Ct. R. 6-5(a) (2016). We hold that the Act's ballot title is legally sufficient and deny Conway's petition.

On July 7, 2016, the Secretary of State certified that the Act, as approved in Arkansas Attorney General Opinion No. 2014-086, had met the signature requirements set forth in article 5, section 1 of the Arkansas Constitution in order to place the proposed initiated act on the Arkansas general election ballot of November 8, 2016, as Ballot Issue Number 4. The text of the ballot title of the Act, as approved by the Arkansas Attorney General, is as follows:

> An act making the medical use of cannabis, commonly called marijuana, legal under Arkansas state law, but acknowledging that cannabis use, possession, and distribution for any purpose remain illegal under federal law; establishing a system for the cultivation and distribution of cannabis for qualifying patients through nonprofit cannabis care centers and for the testing for quality, safety, and potency of cannabis through cannabis testing labs; granting nonprofit cannabis care centers and cannabis testing labs limited immunity; allowing localities to limit the number of nonprofit

cannabis care centers and to enact zoning regulations governing their operations; providing that qualifying patients, their designated caregivers, cannabis testing lab agents, and nonprofit cannabis care center agents shall not be subject to criminal or civil penalties or other forms of discrimination for engaging in or assisting with qualifying patients' medical use of cannabis or for testing and labeling cannabis; allowing limited cultivation of cannabis by qualifying patients and designated caregivers if the qualifying patient lives more than twenty (20) miles from a nonprofit cannabis care center and obtains a hardship cultivation certificate from the Department of Health; allowing compensation for designated caregivers; requiring that in order to become a qualifying patient, a person submit to the state a written certification from a physician that he or she is suffering from a qualifying medical condition; establishing an initial list of qualifying medical conditions; directing the Department of Health to establish rules related to the processing of applications for registry identification cards, and hardship cultivation certificates, the operations of nonprofit cannabis care centers and cannabis testing labs, and the addition of qualifying medical conditions if such additions will enable patients to derive therapeutic benefit from the medical use of cannabis; setting maximum application and renewal fees for nonprofit cannabis care centers and cannabis testing labs; directing the Department of Health to establish a system to provide affordable cannabis from nonprofit cannabis centers to low income patients; establishing qualifications for registry identification cards; establishing qualifications for hardship cultivation certificates; establishing standards to ensure that qualifying patient and designated caregiver registration information is treated as confidential; directing the Department of Health to provide the legislature annual quantitative reports about the medical cannabis program; setting certain limitations on the use of medical cannabis by qualifying patients; establishing an affirmative defense for the medical use of cannabis; establishing registration and operation requirements for nonprofit cannabis care centers and cannabis testing labs; setting limits on the number of nonprofit cannabis care centers; setting limits on the amount of cannabis a nonprofit cannabis care center may cultivate and the amount of usable cannabis a nonprofit cannabis care center may dispense to a qualifying patient; prohibiting certain conduct by and imposing certain conditions and requirements on physicians, nonprofit cannabis care centers, nonprofit cannabis care center agents, cannabis testing labs, cannabis testing lab agents, qualifying patients, and designated caregivers; prohibiting

felons from serving as designated caregivers, owners, board members, or officers of nonprofit cannabis care centers or cannabis testing labs, nonprofit cannabis care center agents, or cannabis testing lab agents; allowing visiting qualifying patients suffering from qualifying medical conditions to utilize the medical cannabis program; and prohibiting special taxes on the sale of medical cannabis and directing the state sales tax revenues received from the sale of cannabis to cover the costs to the Department of Health for administering the medical cannabis program and the remainder to aid low income qualifying patients through the affordability clause.

On August 24, 2016, Conway filed her petition requesting that this court review the legal sufficiency of the ballot title and sought an expedited briefing schedule. On August 25, 2016, ACC moved to intervene and further moved to dismiss the petition for failure to state facts on which relief could be granted. On August 25, 2016, Conway filed an amended petition. On August 30, 2016, this court granted Conway's motion to expedite and ACC's motion to intervene, and this court set a briefing schedule.[1]

Ballot titles must include an impartial summary of the proposed measure that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law. *Cox v. Martin*, 2012 Ark. 352, at 5, 423 S.W.3d 75, 81. It is not required that the ballot title contain a synopsis of the statute; it is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Id.*, 423 S.W.3d at 81. The ballot title must be free from any misleading tendency, whether

---

[1]This court also passed ACC's motion to dismiss the original petition until the case was submitted. While ACC moved to dismiss Conway's original petition, it did not move to dismiss Conway's amended petition. Because Conway filed an amended petition, ACC's motion to dismiss the original petition is moot.

of amplification, of omission, or of fallacy, and it must not be tinged with partisan coloring. *Id*., 423 S.W.3d at 81. This court has further noted that a ballot title need not include every possible consequence or impact of a proposed measure, and it need not cover or anticipate every possible legal argument the proposed measure might evoke. *Richardson v. Martin*, 2014 Ark. 429, at 11, 444 S.W.3d 855, 862. Moreover, this court will not interpret the proposed measure or discuss its merits or faults. *Id.* at 11, 444 S.W.3d at 861. When this court reviews a challenge to the ballot title, the burden is on the party challenging the ballot title to prove that it is misleading or insufficient. *Id.* at 8, 444 S.W.3d at 860.

Under section 102(n) of the proposed Act, a "Qualifying Patient" is defined in part as a "person who has been diagnosed by a Physician as having a Qualifying Medical Condition." According to section 102(f), a "Designated Caregiver" is defined in part as a "person . . . who has agreed to Assist with a Qualifying Patient's Medical Use of Cannabis, including acquiring Usable Cannabis from a NonProfit Cannabis Care Center and delivering it to the Qualifying Patient." Section 102(j) defines a "Nonprofit Cannabis Care Center" in part as a nonprofit registered with the Arkansas Department of Health, and section 109(e) explains that it may engage in various marijuana-related activities. Section 102(i) defines "Medical Use" as the "acquisition, possession, preparation, use, delivery, transfer or transportation of Cannabis or paraphernalia relating to the administration of Cannabis to treat or alleviate a Qualifying Patient's Qualifying Medical Condition or symptoms associated with the Qualifying Patient's Qualifying Medical Condition." "Cannabis" is defined in part as "Marijuana" in section 102(b). As provided in section 102(q), "Usable Cannabis" includes "all Cannabis except seeds

5

and growing plants."

First, Conway contends that the ballot title falsely states that the Act limits the use of marijuana when in fact there is no limit on the amount of marijuana that patients may legally use. Conway notes that the ballot title states that the Act "set[s] certain limitations on the use of medical cannabis by qualifying patients" and also "set[s] limits on . . . the amount of usable cannabis a nonprofit cannabis care center may dispense to a qualifying patient." Conway contends that this is false because, even though the section 110(b)(11) of the Act limits the dispensing of marijuana by a cannabis care center to no more that 2.5 ounces during a fifteen-day period, section 103(a)(1) limits a patient's possession to 2.5 ounces, and section 103(b)(1) limits a caregiver's possession to 2.5 ounces per patient, these limits are undercut by section 103(d) of the Act. Section 103(d) provides that a "Cardholder"—defined in section 102(c) as a "Qualifying Patient, a Designated Caregiver, Cannabis Testing Lab Agent or a Nonprofit Cannabis Care Center Agent"—"shall not be subject to arrest, prosecution, or penalty in any manner or denied any right or privilege . . . for giving an amount of Usable Cannabis the person is allowed to possess . . . to a Qualifying Patient or Designated Caregiver for the Qualifying Patient's Medical Use, when nothing of value is transferred in return or for offering to do the same." Conway argues that under section 103(d), gifts of marijuana are not limited by the Act, and thus a patient's use of marijuana under the Act is unlimited so long as he or she does not possess more that 2.5 ounces at any one time.

The ballot title provides that the "act mak[es] the medical use of cannabis, commonly called marijuana, legal under Arkansas state law." Thus, the ballot title states that the Act limits

the use of marijuana to its medical use. Further, the Act limits possession of marijuana to certain amounts, and possession above these amounts is unlawful. The Act also limits the amount of marijuana that a cannabis care center may dispense. Thus, the ballot title is not false in providing that the Act creates limits on marijuana use.

Second, Conway contends that the ballot title falsely states that the Act "set[s] limits on the number of cannabis care centers" when in fact the number is potentially unlimited. Conway argues that while section 109(c) of the Act permits the Department of Health to issue one registration certificate for every twenty pharmacies, the Department of Health may issue "registration certificates in excess of this limit if The Department determines that additional Nonprofit Cannabis Care Centers are necessary to provide convenient access to Usable Cannabis by Qualifying Patients in all parts of the state." Conway asserts that the ballot title is misleading because it gives the false impression that the cannabis care centers will be limited by an actual number, when in fact their number is limited by a ratio, and that number may change over time because of an increase in the number of pharmacies or because the Department of Health may register additional centers.

The ballot title, however, does not provide that there is an absolute limit on the number of cannabis care centers. Rather, the ballot title informs the voters that the Act does, in fact, create limits on the number of cannabis care centers. As we have previously noted, the ballot title does not have to contain a synopsis of the statute. Here, the ballot title is complete enough to convey an intelligible idea of the scope and import of the proposed law.

7

Cite as 2016 Ark. 322

Third, Conway argues that the ballot title gives the false impression home-grown marijuana is to be tested while the Act does not provide for its testing. The ballot title states that the Act "establishe[s] a system for the cultivation and distribution of cannabis for qualifying patients through nonprofit cannabis care centers and for the testing for quality, safety, and potency of cannabis through cannabis testing labs." Cultivation of marijuana by qualifying patients and caregivers is discussed in another part of the ballot title, which states that the Act "allow[s] limited cultivation of cannabis by qualifying patients and designated caregivers if the qualifying patient lives more than twenty (20) miles from a nonprofit cannabis care center and obtains a hardship cultivation certificate from the Department of Health."

Here, the ballot title describes a system for the cultivation and distribution of cannabis for qualifying patients through nonprofit cannabis care centers in the same portion of the ballot title that describes the testing for quality, safety, and potency of cannabis through cannabis testing labs. Further, the Act addresses marijuana cultivation by qualifying patients and care givers in a separate provision. Given this juxtaposition, the ballot title does not suggest that marijuana cultivated by qualifying patients and care givers will likewise be tested. Thus, this portion of the ballot title is not misleading.

Fourth, Conway asserts that, while the ballot title states that the Act "mak[es] the medical use of cannabis, commonly called marijuana, legal under Arkansas state law," the ballot title fails to state that the Act permits cannabis care centers to sell food and drink that contain marijuana. However, as stated above, it is not necessary that a ballot title include

8

every possible consequence or impact of a proposed measure. Here, the ballot title, which states that the Act makes the medical use of marijuana legal under Arkansas state law, conveys an intelligible idea of the scope of the proposed law.

Fifth, Conway notes that the ballot title states that "qualifying patients, their designated caregivers, cannabis testing lab agents, and nonprofit cannabis care center agents shall not be subject to criminal or civil penalties *or other forms of discrimination* for engaging in or assisting with qualifying patients' medical use of cannabis or for testing and labeling cannabis." (Emphasis added.) Conway argues that the title is incomplete and misleading with regard to the effect the emphasized language would have on employers, landlords, churches, and schools. Conway asserts that employers would be "forc[ed]" to hire employees who use marijuana. Also, Conway urges that, under the Act, landlords cannot refuse to lease to qualifying patients or prohibit them from using marijuana, other than smoking marijuana, on the leased premises. Further, Conway suggests that colleges would be forced to allow students to use marijuana in the dormitory, and private and religious schools would be forced to enroll students who use marijuana.

As noted previously, this court will not interpret the proposed measure or discuss its merits or faults, and it is not necessary that a ballot title include every possible consequence or impact of a proposed measure. Further, we have noted above that it is sufficient for the ballot title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. Here, the ballot title does provide that certain persons will not be subject

to "forms of discrimination" for engaging in or assisting with a qualifying patient's medical use of cannabis or for testing and labeling cannabis. Thus, it conveys an intelligible idea of the scope and import of the proposed law.

As the sixth and final argument, Conway asserts that the ballot title uses partisan coloring in order to appeal to the compassionate and sympathetic instincts of voters. Particularly, Conway notes that the use of the description "cannabis care centers" is a euphemism for a dispensary that sells marijuana and marijuana paraphernalia. Conway notes that "marijuana" is called "cannabis" in the ballot title. Further, Conway observes that persons assisting the patients in the use of marijuana are called "caregivers." Conway also notes the repeated use of the words "care" or "caregivers" in the ballot title and use of the word "suffering" twice in the ballot title. She also notes that the word "hardship" is used in the ballot title as it relates to hardship cultivation certificates.

Here, the ballot title gives the voter a fair understanding that the consumption of marijuana is at issue because the ballot title specifically notes that the word "cannabis" means "marijuana." Moreover, the ballot title explains that nonprofit cannabis care centers are involved in the distribution of marijuana in stating that the Act provides for the "distribution of cannabis for qualifying patients through nonprofit cannabis care centers." Further, the ballot title is not misleading, because the ballot title makes clear that care givers are assisting in the use of marijuana. As for the use of the word "suffering," the ballot title explains that the purpose of the Act is to alleviate medical problems through the use of marijuana. Regarding the word "hardship," the ballot title indicates that marijuana may be cultivated when a qualifying patient lives more than twenty miles from a nonprofit cannabis care center and that

this is considered a "hardship." Thus, the ballot title is not tinged with partisan coloring. Instead, it gives voters a fair understanding of the issues presented.

Thus, Conway has not met her burden of proving that the ballot title is insufficient. Rather, the ballot title is an impartial summary of the proposed measure that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law. Accordingly, we deny her petition.

Petition denied.

*Friday, Eldredge & Clark, LLP*, by: *Robert S. Shafer* and *Phillip M. Brick, Jr.*, for petitioner.
*AJ Kelly*, General Counsel and Deputy Secretary of State, and *Michael Fincher*, Associate General Counsel, for respondent.
*John Wesley Hall*, for intevenor.