COURTNEY HUDSON GOODSON, Associate Justice
The petitioner, Jim Knight, individually and on behalf of Citizens for Local Choice (CLC), brings this original action to challenge the sufficiency of the ballot title with regard to Issue No. 4, which provides for the issuance of four casino licenses in the state. By the complaint, petitioner seeks to enjoin respondent Arkansas Secretary of State Mark Martin from certifying any ballots cast for the proposed amendment at the November 6, 2018 general election. The initiated measure is sponsored by intervenor Don Tilton, both individually and on behalf of Arkansas Jobs Coalition, a ballot question committee. Our jurisdiction to determine this matter is conferred by amendment 7, as codified in article 5, section 1 of the Arkansas Constitution, section 2(D)(4) of amendment 80, and Arkansas Supreme Court Rule 6-5(a). We deny the petition.
Knight is a resident of Pope County and a registered Arkansas voter. Knight is also a member of CLC. CLC is a ballot question committee as defined in Arkansas Code Annotated § 7-9-402(2) (Repl. 2018). The Attorney General certified the popular name and ballot title for Issue No. 4 on May 23, 2018. The next day the Attorney General issued another opinion recertifying the same popular name and ballot title, with the distinction being for typographical and scrivener's errors. On September 5, 2018, Secretary of State and Respondent Mark Martin declared that the proposed initiated measure met the requirements set forth in *504 article 5, section 1 of the Arkansas Constitution and placed the proposed amendment on the November 6, 2018 ballot. The popular name and ballot title of the proposed amendment, as certified by the Attorney General, reads as follows:
(Popular Name)
AN AMENDMENT TO REQUIRE FOUR LICENSES TO BE ISSUED FOR CASINO GAMING AT CASINOS, ONE EACH IN CRITTENDEN (TO SOUTHLAND RACING CORPORATION), GARLAND (TO OAKLAWN JOCKEY CLUB, INC.), POPE, AND JEFFERSON COUNTIES
(Ballot Title)
An amendment to the Arkansas Constitution to require that the Arkansas Racing Commission issue licenses for casino gaming to be conducted at four casinos in Arkansas, being subject to laws enacted by the General Assembly in accord with this amendment and regulations issued by the Arkansas Racing Commission ("Commission"); defining "casino gaming" as dealing, operating, carrying on, conducting, maintaining, or exposing for play any game played with cards, dice, equipment, or any mechanical, electromechanical, or electronic device or machine for money, property, checks, credit, or any representative value, as well as accepting wagers on sporting events; providing that individuals under 21 are prohibited from engaging in casino gaming; providing that the Commission shall issue four casino licenses, one to Southland Racing Corporation ("Southland") for casino gaming at a casino to be located at or adjacent to Southland's greyhound track and gaming facility in Crittenden County, one to Oaklawn Jockey Club, Inc. ("Oaklawn") to require casino gaming at a casino to be located at or adjacent to Oaklawn's horse track and gaming facility in Garland County, one to an applicant to require casino gaming at a casino to be located in Pope County within two miles of Russellville, and one to an applicant to require casino gaming at a casino to be located in Jefferson County within two miles of Pine Bluff; providing that upon receiving a casino license, licensees will be required to conduct casino gaming for as long as they have a casino license providing that Southland and Oaklawn do not have to apply for a license and will automatically receive a casino license upon the Commission adopting rules and regulations to govern casino gaming; providing that the Commission shall require all applicants for the two remaining casino licensees, one in Pope County and one in Jefferson County to pay an application fee, demonstrate experience in conducting casino gaming, and submit either a letter of support from the county judge or a resolution from the county quorum court in the county where the casino would be located and, if the proposed casino is to be located within a city, a letter of support from the mayor of that city; providing that the Commission shall regulate all casino licensees; defining "net casino gaming receipts" as casino gaming receipts less amounts paid out or reserved as winnings to casino patrons; providing that for each fiscal year, a casino licensee's net casino gaming receipts are subject to a net casino gaming receipts tax of 13% on the first $150,000,000 of net casino gaming receipts or any part thereof, and 20% on net casino gaming receipts exceeding $150,000,001 or any part thereof; providing that no other tax, other than the net casino gaming receipts tax, may be imposed on gaming receipts or net casino gaming receipts; providing that the net casino gaming receipts tax shall be distributed 55% to the State of Arkansas General Revenue *505 Fund, 17.5% to the Commission for deposit into the Arkansas Racing Commission Purse and Awards Fund to be used only for purses for live horse racing and greyhound racing by Oaklawn and Southland, as the case may be, 8% to the county in which the casino is located, and 19.5% to the city in which the casino is located, provided that if the casino is not located within a city, then the county in which the casino is located shall receive the 19.5%; permitting casino licensees to conduct casino gaming on any day for any portion of all of any day; permitting casino licensees to sell liquor or provide complimentary servings of liquor during all hours in which the casino licensees conduct casino gaming only for on-premises consumption at the casinos and permitting casino licensees to sell liquor or provide complimentary servings of liquor without allowing the residents of a dry county or city to vote to approve the sale of liquor; providing that casino licensees shall purchase liquor from a licensed Arkansas wholesaler; permitting shipments of gambling devices that are duly registered, recorded, and labeled in accordance with federal law into any county in which casino gaming is authorized; declaring that all constitutional provisions, statutes, and common law of the state that conflict with this amendment are not to be applied to this Amendment.
On September 12, 2018, petitioner filed a complaint alleging that the popular name and ballot title for Issue No. 4 are materially misleading in five respects: (1) that voters are not informed in the ballot title that perpetual monopolies are given to private corporations over which local citizens have no control; (2) that voters are misled as to whether licenses are merely "issued" or if gambling is "required;" (3) that voters are misled as to whether local officials can approve casinos; (4) that voters are misled as to whether citizens lose oversight of corporations; and (5) that voters are misled as to whether local citizens lose oversight of unlimited free alcohol. Petitioner has briefed all five points raised in the original-action complaint.
In connection with the complaint, the petitioner filed motions for expedited consideration and for consecutive briefing. Tilton moved to intervene, and he and the respondent filed responses to the complaint. This court granted the motion to intervene, set an expedited briefing schedule, and ordered consecutive briefing.[1] Knight v. Martin , 2018 Ark. 258, 2018 WL 4474666 (per curiam). With the briefing complete, we now decide the merits of the complaint.
I. Sufficiency of the Popular Name
Petitioner argues that the popular name is insufficient in two respects. First, petitioner argues that the ballot title is misleading because the proposed amendment's popular name calls for casino licenses to be "issued" and the ballot title and proposed amendment itself require licensees to "conduct casino gambling." Additionally, petitioner argues that the popular name does not inform voters that local citizens will lose control of local alcohol sales or that sports wagering is included in the amendment.
The "popular name is a useful legislative device that need not contain the same detailed information or include exceptions that might be required of a ballot title." Parker v. Priest , 326 Ark. 123, 129, 930 S.W.2d 322, 325 (1996). Additionally, the popular name is to be considered with the ballot title in determining its sufficiency.
*506 May v. Daniels , 359 Ark. 100, 194 S.W.3d 771 (2004). The popular name must only reflect a measure in a way that is "concise enough, and clear enough, for the voters to refer to and identify it easily." Gaines v. McCuen , 296 Ark. 513, 517, 758 S.W.2d 403, 405 (1988). However, a popular name must not contain catch phrases or slogans that tend to mislead or give partisan coloring to a proposal. May, supra .
A. Licenses to be Issued and Gaming to be Conducted
Petitioner's first challenge to the proposed amendment's popular name is characterized as a challenge to the ballot title. Petitioner argues that the popular name only requires "licenses to be issued," while the ballot title and the proposed amendment require licensees to "conduct casino gaming." Although petitioner argues that the ballot title is misleading because the popular name conflicts with the ballot title and the proposed amendment, we disagree. In reality, petitioner's argument is that the popular name is insufficiently detailed. Both the ballot title and the proposed amendment require the issuance of licenses. The fact that the ballot title and the text of the proposed amendment provide more detailed information about the requirement that licensees conduct casino gaming does not amount to a conflict with the popular name or mean that the popular name is misleading. See Parker, supra.
B. Alcohol Sales and Sports Wagering
Petitioner also argues that the popular name does not inform voters that local citizens will lose control of local alcohol sales or that sports wagering is included in the amendment. Although the proposed amendment's effect on alcohol sales and sports wagering is not included in the popular name, it is included in the ballot title. As previously mentioned, the popular name need not be as detailed as a ballot title. Parker, supra. Additionally, we must consider the ballot title with the popular name to determine the popular name's sufficiency. May, supra . We believe that the popular name, when read together with the ballot title, is sufficient. Nothing about the popular name is misleading, and we believe it offers voters a clear and concise way to identify the measure to be considered.
II. Sufficiency of the Ballot Title
Petitioner argues that the ballot title is insufficient in three respects. First, petitioner argues that the ballot title omits necessary information because it fails to inform voters that Issue No. 4 overturns article 2, section 19's constitutional ban of monopolies and perpetuities by giving exclusive, perpetual licenses for casino gambling and alcohol sales. Next, petitioner argues that the ballot title misleads voters into believing that local elected officials can approve or disapprove of casinos in their respective communities. Finally, petitioner argues that the ballot title is misleading because it does not inform voters that the provisions of article 12 of the Arkansas Constitution, which allow for the revocation of a corporate charter, are superseded by Issue No. 4 and that voters are misled into thinking that they are gaining authority due to the requirement for a letter of approval when in reality they are losing authority. We recently discussed the familiar standards governing our review of ballot titles:
The ballot title must be an impartial summary of the proposed amendment, and it must give the voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. May v. Daniels , 359 Ark. 100, 194 S.W.3d 771 (2004) ;
*507 Scott v. Priest , 326 Ark. 328, 932 S.W.2d 746 (1996). A ballot title must be free of any misleading tendency whether by amplification, omission, or fallacy, and it must not be tinged with partisan coloring. Parker v. Priest , 326 Ark. 386, 931 S.W.2d 108 (1996) ; Bailey v. McCuen , 318 Ark. 277, 884 S.W.2d 938 (1994). The ballot title need not contain a synopsis of the proposed amendment or cover every detail of it. See Becker v. McCuen , 303 Ark. 482, 798 S.W.2d 71 (1990) ; Sturdy v. Hall , 204 Ark. 785, 164 S.W.2d 884 (1942). However, if information omitted from the ballot title is an essential fact that would give the voter serious ground for reflection, it must be disclosed. Walker v. McCuen , 318 Ark. 508, 886 S.W.2d 577 (1994) ; Page v. McCuen , 318 Ark. 342, 884 S.W.2d 951 (1994). This court has long recognized the impossibility of preparing a ballot title that would suit everyone. Cox v. Daniels , 374 Ark. 437, 288 S.W.3d 591 (2008) ; Hogan v. Hall , 198 Ark. 681, 130 S.W.2d 716 (1939). Thus, the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. Roberts v. Priest , 341 Ark. 813, 20 S.W.3d 376 (2000) ; Porter v. McCuen , 310 Ark. 562, 839 S.W.2d 512 (1992).
The sufficiency of a ballot title is a matter of law to be decided by this court. May , supra ; Bailey, supra. Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. May , supra ; Mason v. Jernigan , 260 Ark. 385, 540 S.W.2d 851 (1976). However, this approach does not imply that liberality is boundless or that common sense is disregarded. Christian Civic Action Comm. v. McCuen , 318 Ark. 241, 884 S.W.2d 605 (1994) ; Dust v. Riviere , 277 Ark. 1, 638 S.W.2d 663 (1982). In addition, when reviewing a challenge to a ballot title, this court recognizes that article 5, section 1 places the burden upon the party challenging the ballot title to prove that it is misleading or insufficient. Richardson v. Martin , 2014 Ark. 429, 444 S.W.3d 855 ; Cox v. Martin , 2012 Ark. 352, 423 S.W.3d 75.
Finally, we observe that it is not our purpose to examine the relative merit or fault of the proposed changes in the law; rather, our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. Cox v. Daniels , supra ; May, supra . In other words, "[t]he question is not how the members of this court feel concerning the wisdom of this proposed amendment, but rather whether the requirements for submission of the proposal to the voters has been met." Ferstl v. McCuen , 296 Ark. 504, 509, 758 S.W.2d 398, 401 (1988).
Rose v. Martin , 2016 Ark. 339, at 4-5, 500 S.W.3d 148, 151-52.
With these standards in mind, we turn to the specific arguments petitioner makes in his challenge to Issue No. 4's ballot title.
A. Monopolies and Perpetuities
Petitioner first argues that the ballot title omits necessary information because it fails to inform voters that Issue No. 4 overturns article 2, section 19's constitutional ban on monopolies and perpetuities by giving exclusive, perpetual licenses for casino gambling and alcohol sales. Article 2, section 19 of the Arkansas Constitution provides that "[p]erpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed; nor *508 shall any hereditary emoluments, privileges or honors ever be granted or conferred in this State." Petitioner asserts that the proposed amendment is limited to gambling by named private-casino corporations and that licenses granted to those corporations can last into perpetuity.
However, the proposed amendment does not overturn the constitution's general ban on monopolies. Just as a measure to allow a state lottery did not overturn the constitution's general ban on lotteries in Cox v. Daniels , supra , the amendment proposed here does nothing to invalidate the constitution's general prohibition on monopolies. Furthermore, the ballot title identifies Issue No. 4 as a constitutional amendment, which is sufficient to inform voters that change will result. Id. Additionally, petitioner is wrong in asserting that the proposed amendment is limited to gambling by named private-casino corporations. In reality, only two entities to receive casino licenses are identified. The proposed amendment would require the issuance of four casino licenses, one to Oaklawn, one to Southland, and one each in Jefferson and Pope Counties to an unnamed entity or entities. We considered a similar proposed amendment in Parker , supra , in which the ballot title explained that the proposed amendment would allow voters in Hot Springs to decide whether to authorize casino gambling "at or adjacent to the Oaklawn racetrack." Parker , 326 Ark. at 138, 930 S.W.2d 322. The proposal in Parker also provided for casino establishments at two other Hot Springs locations, as well as other types of gambling. Although we questioned whether the proposal there actually created a monopoly, we concluded that even if it did, "that effect is clearly stated in the ballot title." Id. at 133, 930 S.W.2d 322.
As in Parker , the ballot title here clearly sets forth the issue voters must decide by informing them that the proposed amendment requires the Arkansas Racing Commission to issue a casino license to Oaklawn, a casino license to Southland, and a casino license in both Jefferson and Pope Counties. Likewise, the ballot title clearly explains that the casinos may sell or offer complimentary liquor "without allowing residents of a dry county or city to vote to approve the sale of liquor." Finally, petitioner is wrong in asserting that the licenses granted can last into perpetuity. In fact, petitioner himself acknowledges that licensees must be in compliance with the amendment for the renewal of their licenses. As we noted above, a ballot title need not contain a synopsis of the proposed amendment or cover every detail of it. See Becker , supra ; Sturdy, supra. It is enough for the ballot title to impart a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. May, supra . We conclude that the ballot title adequately sets forth the proposed changes in the law with respect to the issuance and duration of casino licenses and the provision of alcoholic beverages.
B. Letter of Support
Next, petitioner argues that the ballot title misleads voters into believing that local elected officials can approve or disapprove of casinos in their respective communities. Specifically, petitioner argues that the ballot title's description of the proposed amendment's requirement that applicants "submit either a letter of support from the county judge or a resolution from the quorum court in the county where the casino would be located and, if the proposed casino is to be located within a city, a letter of support from the mayor of that city," may mislead voters into believing that local officials retain the power to approve or disapprove of a casino locating *509 in their community. We disagree. The ballot title does nothing more than accurately describe the proposed amendment's requirement that applicants for a casino license in Jefferson and Pope Counties obtain a letter of support before they may be issued a license. To the extent that petitioner argues that the term "letter of support" should be defined, we believe that most voters will understand the term without further explanation. Furthermore, not every term must be defined in the ballot title. Cox v. Martin, supra.
C. Oversight of Corporations
Finally, petitioner argues that the ballot title is misleading because it does not inform voters that the provisions of Article 12 of the Arkansas Constitution, which allow for the revocation of a corporate charter, are superseded by Issue No. 4, and that voters are misled into thinking that they are gaining authority due to the requirement for a letter of approval when, in reality, they are losing authority. However, the ballot title states that casinos are "subject to laws enacted by the General Assembly and in accord with this amendment and regulations issued by the Arkansas Racing Commission." The amendment itself provides in section 4(e)(8) that the Racing Commission shall adopt rules governing the suspension or termination of casino licenses. The ballot title also states that all constitutional provisions, statutes, and common law of the state that conflict with the proposed amendment are not to be applied to the proposed amendment. Thus, the ballot title is not misleading in this respect. Although petitioner worries that the General Assembly would be unable to revoke Oaklawn's charter under article 12, section 6 if, in the future, it were to conclude that horse racing and gambling are injurious to the citizens, ballot titles are not required to include every possible consequence or effect of a proposed measure and need not cover or anticipate every possible legal argument that the proposed measure might evoke. Conway v. Martin , 2016 Ark. 322, 499 S.W.3d 209. We conclude that this point is without merit.
III. Conclusion
In conclusion, petitioner has not met his burden of proving that the ballot title is insufficient. We believe that the popular name and ballot title of Issue No. 4 give voters a fair understanding of the issues presented and the scope and significance of the proposed changes in law, are free of any misleading tendency or partisan coloring, and will allow voters to reach an intelligent and informed decision for or against the proposal and understand the consequences of his or her vote. Therefore, Issue No. 4 is proper for inclusion on the November 6, 2018 ballot and we deny the petition. We order the mandate to issue within five days from the filing of this opinion unless a petition for rehearing is filed.
Petition denied.
Special Justice Hugh Finkelstein joins in this opinion.
Kemp, C.J., not participating.

This court denied petitioner's motion for oral argument.