SLIP OPINION

Cite as 2016 Ark. 334

# SUPREME COURT OF ARKANSAS

No. CV-16-763

| | |
|---|---|
| NANCY LEE WILSON and PAULA JEAN CASEY, Individually and on Behalf of FAIRNESS FOR ARKANSANS<br><br>PETITIONERS<br><br>V.<br><br>HONORABLE MARK MARTIN, SECRETARY OF STATE, In his Official Capacity<br><br>RESPONDENT<br><br>CHASE DUGGER and STEPHEN CANON, Individually and on Behalf of HEALTH CARE ACCESS FOR ARKANSANS<br><br>INTERVENORS | Opinion Delivered October 13, 2016<br><br><br>AN ORIGINAL ACTION<br><br><br><br><br>PETITION GRANTED; INTERVENORS' MOTION TO DISMISS DENIED; PETITIONERS' MOTION TO STRIKE AMENDED ANSWER MOOT. |

**PAUL E. DANIELSON, Associate Justice**

Petitioners Nancy Lee Wilson and Paula Jean Casey are residents and registered voters of the State of Arkansas and directors of Fairness for Arkansans, a ballot-question committee. Petitioners have filed an original action asking this court to declare the ballot title of a proposed constitutional amendment with the popular name "An Amendment to Limit Attorney Contingency Fees and Non-Economic Damages in Medical Lawsuits" insufficient and that the initiative petition containing the proposed amendment should be removed from the general election ballot, or in the alternative, that Respondent Secretary of State Mark Martin should be enjoined from canvassing or certifying any ballots cast for the amendment

SLIP OPINION

at the November 8, 2016 general election. The proposed amendment is sponsored by Intervenors Chase Dugger and Stephen Canon, acting individually and on behalf of Health Care Access for Arkansans. Our jurisdiction to determine this matter is pursuant to Amendment 7 of the Arkansas Constitution and Arkansas Supreme Court Rule 6-5(a) (2015). We grant the petition and enjoin Respondent from counting or certifying any ballots cast for the amendment.

The text of the proposed amendment is as follows:

SECTION 1. Section 3 of Amendment 80 to the Arkansas Constitution is amended to read as follows:

§ 3. Rules of pleading, practice, and procedure.

(A) ~~The~~ <u>Except as provided in subsection (B) of this section, the</u> Supreme Court shall prescribe the rules of pleading, practice, and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as declared in this Constitution.

<u>(B)(1) The practice of contracting for or charging excessive contingency fees in the course of legal representation of any person or entity seeking damages in an action for medical injury against a health-care provider is hereby prohibited.</u>

<u>(a) An excessive contingency fee is in excess of thirty-three and one-third percent (33 1/3%) recovered.</u>

<u>(b) The above limitation shall apply regardless of whether the recovery is by settlement, arbitration, or judgment; the above limitation shall also apply regardless of the age or mental capacity of the person or entity for whom the recovery is made.</u>

<u>(c) For purposes of subsection (B)(1)(a), "recovered" refers to the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and the attorney's office-overhead costs or charges are not deductible disbursements or costs for such purpose.</u>

(d) The terms "action for medical injury," "health-care provider," and "medical injury" are defined in this Amendment's addition to Article 5, Section 32 of the state Constitution.

(e) The prohibition of excessive medical-injury attorney fees described in this subsection does not extend to workers' compensation cases.

(B)(2) The General Assembly's power to enact laws that prohibit excessive contingency fees includes the subsidiary power to enact laws which govern (a) how the total value or present value of a set of periodic payments should be calculated, (b) how or whether life expectancy or other relevant factors shall be taken into account with respect to those calculations, (c) to what extent the use of total value or present value calculations for such periodic payments shall be required when determining excessive contingency fees, and (d) the consequences and penalties for attorneys who contract for or charge excessive medical-injury contingency fees.

(B)(3) The General Assembly shall have power to enforce, by appropriate legislation, the provisions of this section.

(B)(4) A rule of pleading, practice, and procedure enacted by law under subdivision (B)(1), (B)(2), or (B)(3) of this section shall supersede a conflicting rule of pleading, practice, and procedure prescribed by the Supreme Court.

SECTION 2. Section 32 of Article 5 of the Arkansas Constitution is amended to read as follows:

32. Workmen's Compensation Laws — Actions for personal injuries.
(a) The General Assembly shall have power to enact law as prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise, except as provided in subsection (b) of this section, no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted.

(b)(1)(A) The General Assembly shall enact laws that specify the maximum dollar amount of non-economic damage awards in a civil action for medical injury brought against a health-care provider.
(b)(1)(B) The maximum dollar amount of award of non-economic damages specified under subdivision (b)(1)(A) of this section shall be at least two hundred fifty thousand

SLIP OPINION

dollars ($250,000) per health-care provider against whom a judgment is rendered, regardless of whether the health-care provider is a health-care professional or a health-care business.

(b)(2)(A) "Action for medical injury" means all actions, including actions for wrongful death, whether based in tort, contract, or otherwise, to recover damages on account of medical injury.

(b)(2)(B) "Health-care provider" means either a "health-care professional" or a "health-care business."

(b)(2)(C) "Health-care professional" means an individual providing and billing for health-care services (including a physician, certified registered nurse anesthetist, physician's assistant, nurse, optometrist, chiropractor, physical therapist, dentist, podiatrist, pharmacist, psychologist, or veterinarian) that is licensed by the state or otherwise lawfully providing professional health-care services.

(b)(2)(D) "Health-care business" means an entity providing and billing for health-care services (including a hospital, nursing home, community mental health center, ambulatory surgical treatment, birthing center, intellectual disability institutional habilitation center, nonresidential substitution-based treatment center for opiate addiction, outpatient diagnostic center, recuperation center, rehabilitation facility, hospice, clinic, or home health-care agency) that is licensed by the state or otherwise lawfully providing health-care services; and including an owner, officer, employee, or agent of such a health-care business acting in the course and scope of employment in the providing of health care services.

(b)(2)(E) "Medical injury" means any adverse consequence or any set of adverse consequences arising out of or sustained in the course of the professional services being rendered by a health-care provider to a patient or resident, whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

(b)(3)(A) The General Assembly may, for the purposes of this section, further define "health-care professional" in law, so long as that definition includes the categories listed in section (b)(2)(C).

(b)(3)(B) The General Assembly may, for the purposes of this section, further define "health-care business" in law, so long as that definition includes the categories listed in section (b)(2)(D).

(b)(3)(C) The General Assembly may, for the purposes of this section, further define "medical injury" in law, so long as that definition includes the categories listed in section (b)(2)(E).

4

(b)(4)(A) By a majority vote of each house, the General Assembly shall enact laws in the 2017 Regular Session implementing subdivision (b)(1) of this section.
(b)(4)(B) After enacting the laws as required by subdivision (b)(4)(A) of this section, the General Assembly may amend a law required by subdivision (b)(1) of this section by a two-thirds vote of each house.
(b)(4)(C) In no event shall a law implementing subdivision (b)(4)(A) or (b)(4)(B) of this section violate subdivision (b)(1)(B) of this section.

SECTION 3. This amendment does not supersede or amend the right of trial by jury as declared by the Arkansas Constitution.

SECTION 4. In January of 2018 and every two years after January of 2018, the Supreme Court of Arkansas shall issue a rule which adjusts the maximum dollar amount of non-economic damage awards for inflation or deflation to the nearest multiple of one thousand dollars ($1,000). The biennial adjustment shall be based upon the Consumer Price Index or a comparable index chosen by the Court; when reasonably possible, the particular index the Court chooses shall remain the same over time. The sole intent and effect of the biennial adjustment shall be to compensate for the effects of inflation or deflation with reasonable precision.

SECTION 5. In the event that any section, subsection, subdivision, paragraph, subparagraph, item, sentence, clause, phrase or word of this amendment is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of this amendment, which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional was not originally a part of this amendment.

SECTION 6. This amendment shall be effective on January 1, 2017.

The proposed amendment's popular name is as follows:

An Amendment to Limit Attorney Contingency Fees and
Non-Economic Damages in Medical Lawsuits

The ballot title is as follows:

An amendment to the Arkansas constitution providing that the practice of contracting for or charging excessive contingency fees in the course of legal representation of any person seeking damages in an action for medical injury against a health-care provider is hereby prohibited; providing that an excessive medical-injury contingency fee is greater than thirty-three and one-third percent (33 1/3%) of the amount recovered; providing that, for the purposes of calculating the amount recovered, the figure that

shall be used is the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the medical-injury claim; providing that this limitation shall apply whether the recovery is by settlement, arbitration, or judgment; providing that this limitation shall apply regardless of the age or mental capacity of the plaintiff; providing that the prohibition of excessive medical-injury fees does not apply to workers' compensation cases; providing that the General Assembly may enact legislation which enforces this prohibition, and that it may also enact legislation that determines the relative values of time payments or periodic payments and governs the consequences and penalties for attorneys who contract for or charge excessive medical-injury contingency fees; providing that the General Assembly shall enact a measure which specifies a maximum dollar amount for a non-economic damage award in any action for medical injury against a health-care provider, but that such a measure may never be smaller than two hundred and fifty thousand dollars ($250,000); providing that the General Assembly may, after such enactment, amend it by a vote of two-thirds of each house, but that no such amendment may reduce the maximum dollar amount for a non-economic damage award in any action for medical injury against any health-care provider to less than two hundred and fifty thousand dollars ($250,000); providing that the Supreme Court shall adjust this figure for inflation or deflation on a biennial basis; and providing that this amendment does not supersede or amend the right to trial by jury.

On April 20, 2016, the Attorney General issued Opinion No. 2016-038, certifying the popular name, as modified, and ballot title of the proposed constitutional amendment. Thereafter, Intervenors collected sufficient signatures to place the proposed amendment on the ballot. On August 25, 2016, Respondent certified the proposed amendment to be placed on the ballot as Issue No. 4 for the November 8 general election. Petitioners filed this original action on August 29, 2016. Petitioners allege that the ballot title is insufficient because it (1) fails to convey an intelligible idea of the scope and impact of the proposed amendment, (2) is materially misleading to the voters, and (3) omits material information that is essential for a fair understanding of the amendment. We begin our analysis with a review of the law regarding the sufficiency of ballot titles.

It has long been regarded as axiomatic that the majority of voters, when called upon to vote for or against a proposed measure, will derive their information about its contents from an inspection of the ballot title immediately before exercising the right of suffrage. *Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994). The ballot title must be an impartial summary of the proposed amendment, and it must give voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. *Cox v. Daniels*, 374 Ark. 437, 288 S.W.3d 591 (2008) (citing *May v. Daniels*, 359 Ark. 100, 194 S.W.3d 771 (2004)).

The ballot title must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issue presented. *Id*. It cannot omit material information that would give the voters serious ground for reflection. *Id*. It is required that the title be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Id*. Thus, it must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Id*. This court has long recognized the impossibility of preparing a ballot title that would suit everyone. *Id*. Thus, the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. *Id*.

The issue of the sufficiency of a ballot title is a matter of law to be decided by this court. *Id*. Thus, we will consider the fact of Attorney General certification and attach some

SLIP OPINION

significance to it; however, we will not defer to the Attorney General's certification or give it presumptive effect. *Id.* Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. *Id.* It is not our purpose to examine the relative merit or fault of the proposed changes in the law; rather, our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. *Id.* In other words, "[t]he question is not how the members of this court feel concerning the wisdom of this proposed amendment, but rather whether the requirements for submission of the proposal to the voters have been met." *May*, 359 Ark. at 107, 194 S.W.3d at 777 (quoting *Ferstl v. McCuen*, 296 Ark. 504, 509, 758 S.W.2d 398, 401 (1988)). Ultimately, Amendment 7 places the burden upon the party challenging the ballot title to prove that it is misleading or insufficient. *Cox*, 374 Ark. 437, 288 S.W.3d 591.

Petitioners assert that the ballot title at issue here is insufficient because it fails to define "non-economic damages." Section 2(b)(1)(A) of the amendment directs the General Assembly to enact laws "that specify the maximum dollar amount of non-economic damage awards in a civil action for medical injury brought against a health-care provider." Section 2(b)(1)(B) of the amendment states as follows:

> The maximum dollar amount award of non-economic damages specified under subdivision (b)(1)(A) of this section shall be at least two hundred fifty thousand dollars ($250,000) per health-care provider against whom a judgment is rendered, regardless of whether the health-care provider is a health-care professional or a health-care business.

Both the amendment and the ballot title fail to provide a definition of "non-economic damages." Intervenors point to *Cox v. Daniels*, where we said that "most voters could readily understand the term 'state lottery.'" *Id.* at 447, 288 S.W.3d at 597 (quoting *Christian Civic Action Comm.*, 318 Ark. at 248, 884 S.W.2d at 609). We also stated in *Cox* that a highly technical definition is disfavored in ballot titles. We have disapproved the use of terms that are technical and not readily understood by voters, such that voters would be placed in a position of either having to be an expert in the subject or having to guess as to the effect his or her vote would have. *Cox*, 374 Ark. 437, 288 S.W.3d 591; *see also Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000) (holding that a ballot title was insufficient because it did not sufficiently inform the voter as to what constitutes a "tax increase"); *Christian Civic Action Comm.*, 318 Ark. 241, 884 S.W.2d 605 (striking down a proposed measure because the ballot title was misleading in that it used a definition full of highly technical terms in order to avoid using the term "casino-style gambling").

The term "non-economic damages" is a "technical term" that is not readily understood by voters. Without a definition of this term, the voter would be in the position of guessing as to the effect his or her vote would have unless he or she is an expert in the legal field. In other words, the voter would be unable to reach an intelligent and informed decision for or against the proposal without an understanding of the terms and the consequences of his or her vote. *See Cox*, 374 Ark. 437, 288 S.W.3d 591. Accordingly, we conclude that the ballot title of the proposed amendment is insufficient because it fails to define the term "non-economic damages." Therefore, we grant the petition to enjoin Respondent Secretary of State Mark

Martin from counting or certifying any ballots cast for the proposed amendment at the general election on November 8, 2016.

Having determined that the ballot title is insufficient on the issue of the term "non-economic damages," we need not address the remainder of the issues raised by Petitioners. *See Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994). To be clear, we are not expressing an opinion on the merits of those issues. We further shorten the time for issuance of the mandate to five days and direct that any petition for rehearing be filed within five days from the date that this opinion is issued.

Petition granted. Intervenors' motion to dismiss is denied. Petitioners' motion to strike Intervenors' amended answer is moot.

BRILL, C.J., and WOOD, J., concur.

**HOWARD W. BRILL, Chief Justice, concurring.** It is certainly not the task of this court to give advisory opinions or to expressly tell citizens how to draft ballot titles. But I do believe it is the duty of the court to answer questions presented to us when they are likely to arise again.

Legislators propose amendments, citizens seek signatures for proposed amendments, and the Attorney General approves ballot titles. The spirit of Amendment 7, which gives power to the people, requires us to give appropriate guidance to those constituencies.

To leave the impression that simply changing the ballot title to correct or expand on "non-economic damages" would be sufficient to correct the defects is misleading. For example, the challengers to this amendment presented serious issues concerning the impact

that this amendment would have on the right to a jury trial; likewise, the challengers argued the question whether the ballot title properly explains the change in the relationship of the three branches of government and the limitation on the rule making power of this court.

In sum, I believe this court should have addressed the primary challenges to the ballot title, thereby giving some guidance for the future.

WOOD, J., joins.


**RHONDA K. WOOD, Justice, concurring.** In this matter, we have original jurisdiction and therefore sit as a trial court. *See* Ark. Const. art. 5, § 1. The petitioners filed a complaint containing ten charges against the proposed ballot title. The majority has randomly selected one charge and used that to grant the petition, thus avoiding addressing the remaining charges. I concur because this court should address all the ballot title's defects. While this may be considered advisory under appellate jurisdiction, addressing all the issues is the best practice under original jurisdiction.

In past cases where we have granted a petition challenging a ballot title, we have not limited our review to one defect.[1] For example, in *Bailey v. McCuen*, our court granted a petition to remove a proposed amendment regarding workers' compensation laws from the ballot. 318 Ark. 277, 884 S.W.2d 938 (1994). There, we found that the ballot title contained two separate deficiencies: it failed to inform voters that caps on attorney's fees would be

---

[1]We address all charges when these types of petitions are denied, but that it not relevant to this opinion. *E.g.*, *Cox v. Martin*, 2012 Ark. 352, 423 S.W.3d 75.

completely removed and that workers' compensation statutes would be interpreted liberally rather than strictly.

In *Christian Civic Action Committee v. McCuen*, this court granted a petition to remove from the ballot a proposed constitutional amendment regarding lotteries. 318 Ark. 241, 884 S.W.2d 605 (1994). Petitioners argued that the ballot title was too lengthy and that certain terms, such as "additional racetrack wagering," were misleading. We addressed both issues, holding that the ballot title's length was not insufficient "standing alone," *id.* at 247, 884 S.W.2d at 609, but that the use of "additional racetrack wagering" in lieu of "casino style gambling" rendered the ballot title "fatal[ly] misleading. *Id.* at 250, 884 S.W.2d at 610.

In *Kurrus v. Priest*, we struck a ballot-title amendment that would have abolished sales-and-use taxes. 342 Ark. 434, 29 S.W.3d 669 (2000). The court's opinion addressed multiple insufficiencies. For instance, we held that the ballot title was misleading for failing to inform voters the full import of the terms "next regularly scheduled statewide election," "tax increase," and "taxes." *Id.* at 443–45, 29 S.W.3d at 673–75. In addition to this, we held that the ballot title was unconstitutional because it impaired the freedom of contract. *Id.* at 447, 29 S.W.3d at 676.

In *Scott v. Priest*, this court granted a petition challenging a casino-related amendment that contained three misleading and material omissions. 326 Ark. 328, 932 S.W.2d 746 (1996). Also in *Crochet v. Priest*, we removed another amendment concerning gambling because the ballot title contained multiple infirmities. 326 Ark. 338, 931 S.W.2d 128 (1996). First, we held that the amendment's creation of a Lottery Commission failed to include in the

ballot title the proposed Commission's expansive powers. *Id.* at 345, 931 S.W.2d at 132. Second, we ruled that the ballot title's use of "video terminal game" was tinged with partisan coloring. *Id.* at 347, 931 S.W.2d at 133. Last, we held that the phrase "twenty-five cent video terminal" was misleading because the twenty-five-cent limit could be later enlarged by the proposed Commission. *Id.*

In all, these cases show that this court regularly addresses multiple defects when addressing a ballot-title challenge. We presumably do not want to "hide the ball" from ballot–title sponsors. These sponsors are entitled to know each of the defects their ballot title contains so, in the future, they can submit a ballot title that complies with the law. This is important because Arkansas citizens have a constitutional right to propose laws and amendments; indeed, our constitution states that "[t]he first right reserved by the people is the initiative." Ark. Const. art. 5, § 1; *see also Christian Civic Action Comm.*, 318 Ark. at 250, 884 S.W.2d at 610 ("Amendment 7's reservation to the people of the initiative power lies at the heart of our democratic institutions."). We vindicate this right by addressing all the defects of a ballot title. Otherwise, a citizen's petition could be struck down in piecemeal fashion, and the citizen must endure multiple election cycles, and multiple legal defeats, before submitting his or her initiative to the people of this State for approval.

BRILL, C.J., joins.

*Trotter Law Firm, PLLC*, by: *Scott C. Trotter*, for petitioners.

*AJ Kelly*, General Counsel and Deputy Secretary of State, for respondent.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; *Kutak Rock LLP*, by: *Jess Askew III, David L. Williams*, and *Frederick H. Davis*; and *Daniel Greenberg*, for intervenors.