Jerry COX, Individually, and on Behalf of Family Council Action Committee *v.* Charlie DANIELS, Secretary of State

John Bailey, Bill Halter, and Charles Hathaway, Intervenors

08-1092                                        288 S.W.3d 591

Supreme Court of Arkansas
Opinion delivered October 16, 2008

*Martha M. Adcock,* for petitioner.

*Tim Humphries,* General Counsel; and *Dustin McDaniel,* Att'y Gen., by: *Patrick Hollingsworth* and *Matthew McCoy,* Ass't Att'ys Gen., for Respondent.

*Williams & Anderson, PLC,* by: *W. Jackson Williams, Jess Askew III, Michele Simmons Allgood,* and *Shelli H. Jordan,* for Intervenors.

ANNABELLE CLINTON IMBER, Justice. Petitioner Jerry Cox has filed, individually and on behalf of the Family Council Action Committee and all other Arkansas voters similarly situated,[1] an original action asking this court to declare the popular name and ballot title of Proposed Amendment 3 insufficient and to enjoin Respondent Arkansas Secretary of State Charlie Daniels from placing the measure on the ballot for the November 4, 2008 General Election. The proposed amendment is sponsored by Intervenors John Bailey, Bill Halter, and Charles Hathaway, acting individually and as members of HOPE for Arkansas. Our jurisdiction to determine this matter is pursuant to Amendment 7 of the Arkansas Constitution and Arkansas Supreme Court Rule 6-5(a) (2008). We deny the petition.

The text of Proposed Amendment 3 is as follows:

Be it enacted by the people of the State of Arkansas:

---

[1] Intervenors concede that Petitioner can sue individually but challenge his capacity to sue on behalf of the Family Council Action Committee and all other Arkansas voters similarly situated. Because Petitioner filed properly before this court individually, we need not address his capacity to represent the Family Council Action Committee and other Arkansas voters similarly situated.

Section 14 of Article 19 of the Constitution of the State of Arkansas is amended to read as follows:

Section 14. Lotteries ~~prohibited~~

~~No lottery shall be authorized by this State, nor shall the sale of lottery tickets be allowed.~~

(a) The General Assembly may enact laws to establish, operate, and regulate State lotteries.

(b) Lottery proceeds shall be used solely to pay the operating expenses of lotteries, including all prizes, and to fund or provide for scholarships and grants to citizens of this State enrolled in public and private non-profit two-year and four-year colleges and universities located within the State that are certified according to criteria established by the General Assembly. The General Assembly shall establish criteria to determine who is eligible to receive the scholarships and grants pursuant to this Amendment.

(c) Lottery proceeds shall not be subject to appropriation by the General Assembly and are specifically declared to be cash funds held in trust separate and apart from the State treasury to be managed and maintained by the General Assembly or an agency or department of the State as determined by the General Assembly.

(d) Lottery proceeds remaining after payment of operating expenses and prizes shall supplement, not supplant, non-lottery educational resources.

(e) This Amendment does not repeal, supersede, amend or otherwise affect Amendment 84 to the Arkansas Constitution or games of bingo and raffles permitted therein.

(f) Except as herein specifically provided, lotteries and sale of lottery tickets are prohibited.

The initiative's popular name is:

A CONSTITUTIONAL AMENDMENT AUTHORIZING THE GENERAL ASSEMBLY TO ESTABLISH, OPERATE, AND REGULATE STATE LOTTERIES TO FUND SCHOLARSHIPS AND GRANTS FOR ARKANSAS CITIZENS EN-

ROLLED IN CERTIFIED TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES IN ARKANSAS."

Its ballot title, which essentially mirrors the text of the initiative, is as follows:

> AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE GENERAL ASSEMBLY TO ENACT LAWS TO ESTABLISH, OPERATE, AND REGULATE STATE LOTTERIES; REQUIRING LOTTERY PROCEEDS TO BE USED SOLELY TO PAY THE OPERATING EXPENSES OF LOTTERIES, INCLUDING ALL PRIZES, AND TO FUND OR PROVIDE FOR SCHOLARSHIPS AND GRANTS TO CITIZENS OF THIS STATE ENROLLED IN PUBLIC AND PRIVATE NON-PROFIT TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES LOCATED WITHIN THE STATE THAT ARE CERTIFIED ACCORDING TO CRITERIA ESTABLISHED BY THE GENERAL ASSEMBLY; REQUIRING THE GENERAL ASSEMBLY TO ESTABLISH CRITERIA TO DETERMINE WHO IS ELIGIBLE TO RECEIVE THE SCHOLARSHIPS AND GRANTS; DECLARING THAT LOTTERY PROCEEDS SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; DECLARING LOTTERY PROCEEDS TO BE CASH FUNDS HELD IN TRUST SEPARATE AND APART FROM THE STATE TREASURY TO BE MANAGED AND MAINTAINED BY THE GENERAL ASSEMBLY OR AN AGENCY OR DEPARTMENT OF THE STATE AS DETERMINED BY THE GENERAL ASSEMBLY; REQUIRING LOTTERY PROCEEDS REMAINING AFTER PAYMENT OF OPERATING EXPENSES AND PRIZES TO SUPPLEMENT, NOT SUPPLANT, NON-LOTTERY EDUCATIONAL RESOURCES; DECLARING THAT THIS AMENDMENT DOES NOT REPEAL, SUPERSEDE, AMEND OR OTHERWISE AFFECT AMENDMENT 84 TO THE ARKANSAS CONSTITUTION OR GAMES OF BINGO AND RAFFLES PERMITTED THEREIN; PROHIBITING LOTTERIES AND THE SALE OF LOTTERY TICKETS EXCEPT AS HEREIN SPECIFICALLY PROVIDED.

On November 1, 2007, Attorney General Dustin McDaniel issued an opinion approving the popular name and ballot title and concluding that the popular name is sufficient as submitted and the ballot title plainly represents an impartial summary of the proposed

amendment. Thereafter, Intervenors collected sufficient signatures to place the proposed amendment on the ballot. On July 21, 2008, Respondent announced that the signatures were sufficient and certified the proposed amendment to be placed on the ballot for the November 4 General Election. Petitioner filed this original action on September 19, 2008, and we heard oral argument on October 13, 2008.

Petitioner argues that the ballot title for Proposed Amendment 3 is insufficient because (1) the proposed amendment amounts to a repeal of article 19, section 14 of the Arkansas Constitution and the ballot title fails to inform the voters of such a change; (2) the ballot title fails to define the key term "state lottery" and therefore fails to disclose the broad range of games of chance that may be permitted under the amendment; and (3) the ballot title does not adequately inform the voters of its possible impact on the constitutionality of casino gaming. We begin our analyses with a review of the law regarding the sufficiency of ballot titles.

The ballot title must be an impartial summary of the proposed amendment, and it must give voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. *May v. Daniels*, 359 Ark. 100, 106, 194 S.W.3d 771, 777 (2004). It must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. *Id.* It cannot omit material information that would give the voters serious ground for reflection. *Id.* It is required that the title be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Id.* Thus, it must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Id.* at 107, 194 S.W.3d at 777. This court has long recognized the impossibility of preparing a ballot title that would suit everyone. *Id.* Thus, the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. *Id.*

The issue of the sufficiency of a ballot title is a matter of law to be decided by this court. *Id.*, 194 S.W.3d at 777. Thus, we will consider the fact of Attorney General certification and attach some significance to it; however, we will not defer to the Attorney

General's certification or give it presumptive effect. *Id.* Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. *Id.* It is not our purpose to examine the relative merit or fault of the proposed changes in the law; rather, our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. *Id.* Ultimately, Amendment 7 places the burden upon the party challenging the ballot title to prove that it is misleading or insufficient. *Id.*, 194 S.W.3d at 777-78. With these standards in mind, we discuss each of the points raised by Petitioner.

### I. *Failure to Inform Voters of the Constitutional Provision Being Changed*

The ballot title expressly states that the proposed measure is a constitutional amendment. The ballot title essentially mirrors the text of the proposed amendment except that it does not specifically refer to article 19, section 14. Petitioner argues that this is a material omission because the amendment is not proposing a new provision to the Constitution but changing an existing provision, which amounts to a repeal of the provision. Petitioner asserts that failure to inform voters that the amendment repeals or amends a particular constitutional provision would give voters serious ground for reflection on how to vote.

Respondent and Intervenors argue that the proposed amendment amends article 19, section 14 but does not repeal it because the current constitutional ban on lotteries is preserved in subsection (f) of the amendment. Respondent argues that a ballot title is not required to describe the existing law and asserts that the citizens of this State are acutely aware of the fact that lotteries are currently banned. They also argue that since the ballot title expressly states that it is a constitutional amendment, it fairly and accurately apprises the voters that this measure proposes a new, limited exception to the current prohibition on lotteries.

We conclude that the proposed amendment does not repeal the existing article 19, section 14 of the Arkansas Constitution. We note at the outset that Petitioner has failed to cite any legal authority in support of his argument that this amendment repeals the existing constitutional provision. He bases his argument solely on the fact that the current language in article 19, section 14 has been completely changed by the amendment. This

argument is unconvincing, as the constitutional ban on lotteries, other than "state lotteries" specifically provided for in the amendment, is expressly preserved under subsection (f) of the proposed amendment.

Petitioner argues that the ballot title is insufficient because it omits information concerning how the proposal would impact existing constitutional law regarding lotteries. We have stated that the ballot title is not required to state or summarize the present law, and the fact that it is an amendment is sufficient to inform that change will result. *Becker v. Riviere*, 270 Ark. 219, 224, 604 S.W.2d 555, 558 (1980). Petitioner then attempts to distinguish the instant case from *Becker v. Riviere* and argues that, while the ballot title approved by this court in the *Becker* case did not state existing law, it expressly referred to the particular constitutional provision to be amended. Such a distinction is misplaced. We did not hold in *Becker* that, while the ballot title is not required to state existing law, it is required to include the particular constitutional provision to be amended. Instead, we stated:

> By far the most significant change that the proposed amendment would allow is the abrogation of the present 10 per cent limit on interest rates. We think the proposed ballot title sufficiently puts a voter on notice of this change by stating "the maximum rate of interest shall not exceed 10 percent except by law enacted by two-thirds vote of the general assembly" and that it and the proposed popular name both fairly identify the true purpose of the amendment. We reject petitioners' contention that the ballot title is defective because it does not indicate the present constitutional limit on interest rates is 10 per cent per annum. The ballot title is not required to state the present interest limitation, nor to summarize the Arkansas law on usury. . . . The fact that it is an amendment is sufficient to inform that change will result.

*Id.*, 604 S.W.2d at 557-58. Like the ballot title in *Becker*, the present ballot title is not required to state the present ban on lotteries, nor to summarize the Arkansas law on lotteries. The fact that it is an amendment is sufficient to inform the voters that change will result. Petitioner stresses that, without referring to the particular constitutional provision being amended, the ballot title fails to inform the voters that the amendment changes an existing provision instead of proposing a new provision, thereby failing to provide voters with a choice between the old law and the new law. However, we cannot

see how inclusion of the numerals "Article 19, Section 14" will aid the voters in making an informed choice in the voting booth.

It is not necessary that a ballot title include every detail of an amendment. *May v. Daniels*, 359 Ark. at 111, 194 S.W.3d at 780. A ballot title is sufficient if it recites the general purposes of the proposed law and if the ballot title contains enough information to sufficiently advise voters of the true contents of the proposed law. *Ward v. Priest*, 350 Ark. 345, 359, 86 S.W.3d 884, 891 (2002). Our task is not to require nor draft the perfect proposed popular name and ballot title, but merely to determine if those presented are legally sufficient. *Becker v. Riviere*, 270 Ark. at 226, 604 S.W.2d at 558. Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. *May v. Daniels*, 359 Ark. at 107, 194 S.W.3d at 777. Thus, Petitioner has not met his burden of proving that the ballot title is misleading or insufficient.

## II. Failure to Define the Term "State Lottery"

For his next challenge, Petitioner argues that, without a definition of the term "state lottery" in either the ballot title or the text of the proposed amendment, voters are not adequately informed as to whether, by approving the proposed amendment, they will be authorizing the General Assembly to approve (1) only the sale of lottery tickets by or on behalf of the State or (2) other games of chance operated by or on behalf of the State that may comply with the definition of lottery as set forth by this court in previous decisions. Moreover, Petitioner argues that, by making the term plural, nothing in the language prohibits the State from operating multiple types of lotteries, and the voters are not adequately informed of this possibility.

Respondent and Intervenors point out that this court has already said that most voters will readily understand what a state lottery entails, citing *Christian Civic Action Committee v. McCuen*, 318 Ark. 241, 248, 884 S.W.2d 605, 609 (1994). Respondent further argues that the ballot title explicitly apprises the voters that the General Assembly will be vested with authority to supply these details, and Petitioner is asking the court to speculate on future legislation. Intervenors emphasize that the term "lottery" is not now and never has been defined in the current Arkansas Consti-

tution since its adoption in 1874. Moreover, no definition appears in the earlier state constitutions adopted in 1836, 1861, 1864, and 1868.

We have held that a ballot title is sufficient if it identifies the proposed measure and fairly recites the general purpose, and it need not be so elaborate as to set forth the details of the measure. *Becker v. Riviere*, 270 Ark. at 223, 604 S.W.2d at 557. In this case, the text of the proposed amendment does not contain a definition for "state lottery." When the text of the proposed amendment mirrors the ballot title, we have said that the ballot title is not misleading for failing to give specifics where the amendment does not. *May v. Daniels*, 359 Ark. at 114, 194 S.W.3d at 782.

Petitioner cites *Kinchen v. Wilkins*, 367 Ark. 71, 238 S.W.3d 94 (2006), and argues that when the text is insufficient, the fact that the ballot title mirrors the text does not make the title sufficient. While Petitioner is correct in his interpretation of *Kinchen v. Wilkins*, we have consistently approved the use of the term "state lottery" in ballot titles without a definition. *See Christian Civic Action Committee v. McCuen, supra; Parker v. Priest,* 326 Ark. 123, 930 S.W.2d 322 (1996). We have stated that most voters could readily understand the term "state lottery." *Christian Civic Action Committee v. McCuen,* 318 Ark. at 248, 884 S.W.2d at 609. In an effort to distinguish the instant case from *Christian Civic Action Committee v. McCuen,* Petitioner suggests that voters can distinguish "state lottery" from "charitable bingo game" or "a charitable raffle," but cannot understand the meaning of "state lottery" if it stands alone in the ballot title. We disagree. Our conclusion was not that voters can distinguish different types of gambling, but that voters can understand each of the terms, including the term "state lottery." *Id.,* 884 S.W.2d at 609; *Parker v. Priest,* 326 Ark. at 132, 930 S.W.2d at 327. A highly technical definition is disfavored in ballot titles. While we have approved the use of commonly used terms such as "state lottery" and "charitable bingo game" in ballot titles, we have disapproved the use of terms that are technical and not readily understood by voters, such that voters would be placed in a position of either having to be an expert in the subject or having to guess as to the effect his or her vote would have. *See Kurrus v. Priest,* 342 Ark. 434, 29 S.W.3d 669 (2000); *Christian Civic Action Committee v. McCuen, supra; Crochet v. Priest,* 326 Ark. 338, 931 S.W.2d 128 (1996). For example, in the

*Christian Civic Action Committee* case, we struck a proposed measure from the ballot because the ballot title was misleading in that it used a definition full of highly technical terms in order to avoid using the term "casino-style gaming." *Christian Civic Action Committee v. McCuen, supra.*

In another attempt to distinguish the instant case from *Christian Civic Action Committee v. McCuen* and *Parker v. Priest,* Petitioner argues that, in those two cases, the definition of "state lottery" was included in the text of the proposed amendment. If omission of the definition of "state lottery" would make the ballot title misleading or insufficient, the fact that the definition was included in the text of the proposed amendment would not cure the defect. The popular name and ballot title of the petition are the only portions of the proposal that appear on the ballot. *McDonald v. Bryant,* 238 Ark. 338, 339, 381 S.W.2d 736, 737 (1964).

For his last argument under this point, Petitioner contends that by omitting a definition of the term "state lottery," voters will not know whether the proposed amendment only includes the sale of lottery tickets by or on behalf of the State or whether it also includes other games of chance operated by or on behalf of the State that may fall under the broad judicial definition of lottery in *Burks v. Harris,* 91 Ark. 205, 208, 120 S.W. 979, 980 (1909), *Longstreth v. Cook,* 215 Ark. 72, 80, 220 S.W.2d 433, 437 (1949), and *Shuffield v. Raney,* 226 Ark. 3, 7, 287 S.W.2d 588, 591 (1956). In addition, he suggests that the plural form of "lottery" may be interpreted to authorize the State to run more than one lottery.

As stated earlier, the ballot title does not have to state the existing law. *Becker v. Riviere,* 270 Ark. at 224, 604 S.W.2d at 558. Accordingly, the ballot title is not required to inform voters of the current case law on "lotteries." Moreover, Petitioner's argument would require this court to interpret the proposed amendment, which we do not do in reviewing the sufficiency of ballot titles. *May v. Daniels,* 359 Ark. at 112, 194 S.W.3d at 781. The proposed amendment in the instant case, like the proposal in *May v. Daniels,* puts the voters on notice that the General Assembly will pass further legislation to establish, operate, and regulate state lotteries. Until such legislation is enacted, we cannot interpret the particulars of the amendment. *Id.* at 109, 194 S.W.3d at 779. While Petitioner may disagree with the wisdom of such delegation or the broad discretion afforded by the proposed measure, our court will only review the sufficiency of a ballot title, and will not

examine the merits of the proposed changes in the law. Even if proponents of the ballot title came up with a list of games or a definition of "lottery," that list or definition would still be subject to further judicial interpretation in the event the proposed amendment is adopted.[2]

■ In sum, our job is not to review the relative merit or fault of the proposed initiative, nor is it to fashion a perfect or even a better ballot title. *May v. Daniels*, 359 Ark. at 107, 194 S.W.3d at 777. We also bear in mind that strict technical construction is not required, but that substantial compliance with Amendment 7 is all that is needed. *Id.* at 109, 194 S.W.3d at 779. It is not necessary that a ballot title include every possible consequence or impact of the proposed measure, or anticipate every possible legal argument the proposed measure might evoke. *Id.* at 111, 194 S.W.3d at 780. It is our duty to approve a ballot title if it represents an impartial summary of the measure and contains enough information to enable the voters to mark their ballots with a fair understanding of the issues presented. *Id.* at 110, 194 S.W.3d at 779.

### III. Failure to Disclose the Proposed Amendment's Impact on Casino Gaming

Finally, Petitioner claims that the ballot title should include an express prohibition on casino gaming or any words of limitation indicating that casino gaming will not be permitted. He posits that, by failing to limit the scope of the lottery proposal, the ballot title has not disclosed to the voters that they may be authorizing the legislature to approve casino gaming operated by or on behalf of the State. According to Petitioner, casino games, like slot machines and roulette, clearly qualify under the definition of lotteries as "games in which the outcomes are based purely on chance."

In rebuttal, Respondent points out that Petitioner's concern about the proposal possibly authorizing "casino gaming" in the

---

[2] Petitioner refers to cases from other jurisdictions addressing the issue of whether certain types of games are included in their constitutional amendments authorizing state-operated lotteries. He cites *Dalton v. Pataki*, 835 N.E.2d 1180 (N.Y. 2005), in which the Court of Appeals of New York authorized video lottery gaming, and *State ex rel. Stephan v. Finney*, 867 P.2d 1034 (Kan. 1994), in which the Supreme Court of Kansas authorized casino gambling. In both of those cases, however, the courts were not reviewing the sufficiency of a ballot title; rather, they were interpreting constitutional amendments in the context of lawsuits filed after the amendments were passed.

future is pure conjecture and will require the court to interpret the amendment. Moreover, he submits that, because Petitioner does not define "casino gaming," this court cannot address the contingencies raised by Petitioner until the details of the proposed measure have been implemented by the legislature.

Intervenors further submit that the term "lottery" as used in the Constitution and the proposed amendment does not include casino gaming. They state that Arkansas law has long distinguished between lotteries and other forms of gambling, citing *Longstreth v. Cook, supra*. In essence, Intervenors assert that, except as to lotteries, the Constitution left to the General Assembly the question of permitting, prohibiting, or regulating gambling.

Petitioner also argues that all of the specific types of games of chance covered by the broad definition of lottery set forth in *Burks v. Harris, supra, Longstreth v. Cook, supra*, and *Shuffield v. Raney, supra*, have not been identified by this court, and that the definition is easily construed to prohibit any game of chance not otherwise authorized by the Arkansas Constitution. To support this argument, he insists that if this were not the correct interpretation of the Constitution, proponents of bingo and raffles simply could have enacted a statute to authorize those games instead of using the initiative process under Amendment 7 to place their proposed amendment on the ballot. Petitioner's suggested interpretation of article 19, section 14 is not supported by our case law. We have said that the Constitution does not invalidate every statute that makes gambling legal; it forbids only the legalization of lotteries and lottery tickets. *Scott v. Dunaway*, 228 Ark. 943, 944, 311 S.W.2d 305, 306 (1958). Once again, we have held that, except as to lotteries, the Constitution left to the General Assembly the question of permitting, prohibiting, or regulating gambling. *Longstreth v. Cook*, 215 Ark. at 79, 200 S.W.2d at 437. "Lottery" as defined in *Burks v. Harris, supra*, does not include every game of chance. *See Scott v. Dunaway*, 228 Ark. at 944, 311 S.W.2d at 306. A lottery is a species of gaming, which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize. *Burks v. Harris*, 91 Ark. at 208, 120 S.W. at 980. It is essential to a lottery that the winners be determined by chance alone. *Scott v. Dunaway*, 228 Ark. at 944, 311 S.W.2d at 306.

Petitioner nonetheless earnestly asserts that there is a possibility that the amendment, if adopted, will be interpreted to

permit "casino gaming," and that this undisclosed risk will give voters serious ground for reflection on how to vote. To support this possibility, he relies upon *State ex rel. Stephan v. Finney*, 867 P.2d 1034 (Kan. 1994), in which the Supreme Court of Kansas held that "lottery," as used in a constitutional amendment permitting state-owned lotteries, was broad enough to include casino gambling. While we held in *Parker v. Priest*, 326 Ark. at 132, 930 S.W.2d at 327, that voters can readily understand terms such as "state lottery" and "casino gambling," we have not decided whether "casino gaming" is a type of lottery within the definition of *Burks v. Harris, supra*. For us to address the issue now would necessarily involve construing the proposed amendment and speculating about its future impact on current laws. As we have said, we cannot engage in the interpretation and construction of the text of the amendment and speculate on future legislation. *May v. Daniels, supra*. Our court has rejected a similar argument when it was based entirely on speculation and conjecture as to how the amendment may be interpreted or construed in the future and how it may affect current laws. *May v. Daniels*, 359 Ark. at 111-12, 194 S.W.3d at 780. Petitioner's suggestion that this court may interpret the term "state lottery" to include "casino gaming" under the proposed amendment amounts to nothing more than an assertion and is by no means a certainty, such that the ballot title must inform the voters. Again, it is not necessary that a ballot title include every possible consequence or impact of a proposed measure. *Id*. at 111, 194 S.W.3d at 780. Certainly not every detail of an amendment or how it will work in every situation can be revealed in the name and title. *Id*., 194 S.W.3d at 780. Nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. *Id*., 194 S.W.3d at 780.

Based on the foregoing, we hold that the ballot title and popular name of Proposed Amendment 3 are sufficient, and we deny Petitioner's request to remove the measure from the ballot. The mandate herein will issue on October 22, 2008, unless a petition for rehearing is filed. Any petition for rehearing must be filed by October 20, 2008, and any response by October 21, 2008.

Petition denied.

WILLS, J., not participating.