Cite as 2016 Ark. 339

# SUPREME COURT OF ARKANSAS

No. CV-16-790

|  |  |
|---|---|
| TONI ROSE, INDIVIDUALLY AND ON BEHALF OF ARKANSANS AGAINST LEGALIZED MARIJUANA<br>PETITIONER | Opinion Delivered: October 13, 2016 |
| V. |  |
| MARK MARTIN, SECRETARY OF STATE<br>RESPONDENT |  |
| DAVID COUCH, INDIVIDUALLY AND ON BEHALF OF ARKANSANS UNITED FOR MEDICAL MARIJUANA<br>INTERVENOR | <u>PETITION DENIED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

The petitioner, Toni Rose, individually, and on behalf of Arkansans Against Legalized Marijuana, brings this original action to challenge the sufficiency of the ballot title with regard to an initiated measure popularly known as The Arkansas Medical Marijuana Amendment of 2016. By the complaint, petitioner seeks to enjoin respondent Arkansas Secretary of State Mark Martin from canvassing and certifying any ballots cast for the proposed amendment at the general election to be held on November 8, 2016. The initiated measure is sponsored by intervenor David Couch, both individually and on behalf of Arkansans United for Medical Marijuana, a ballot-question committee. Our jurisdiction to determine this matter is conferred by amendment 7, as codified in article 5, section 1 of the Arkansas Constitution, section 2(D)(4) of amendment 80, and Arkansas Supreme Court

Rule 6-5(a). After reviewing the petitioner's arguments and the responses thereto, we deny the petition.

On February 7, 2016, the Arkansas Attorney General issued an opinion approving the popular name and a revised ballot title for the proposed constitutional amendment. On August 31, 2016, the respondent issued a certification of sufficiency stating that the proposal had met the signature requirements set forth in article 5, section 1 and that the measure would appear on the ballot at the upcoming November election as "Issue No. 6."

The ballot title, as approved by the Attorney General, provides as follows:

An amendment to the Arkansas constitution making the medical use of marijuana legal under state law, but acknowledging that marijuana use, possession, and distribution for any purpose remain illegal under federal law; establishing a system for the cultivation, acquisition, and distribution of marijuana for qualifying patients through licensed medical marijuana dispensaries and cultivation facilities and granting those dispensaries and facilities limited immunity; providing that qualifying patients, as well as dispensary and cultivation facility agents, shall not be subject to criminal or civil penalties or other forms of discrimination for engaging in or assisting with the patients' medical use of marijuana; requiring that in order to become a qualifying patient, a person submit to the state a written certification from a physician licensed in the state that he or she is suffering from a qualifying medical condition; establishing an initial list of qualifying medical conditions; directing the Department of Health to establish rules related to the processing of applications for registry identification cards and the addition of qualifying medical conditions if such additions will enable patients to derive therapeutic benefit from the medical use of marijuana; directing the Alcoholic Beverage Control Division to establish rules related to the operations of dispensaries and cultivation facilities; establishing a Medical Marijuana Commission of five members, two appointed by the President Pro Tempore of the Senate, two appointed by the Speaker of the House of Representatives, and one appointed by the Governor; providing that the Medical Marijuana Commission shall administer and regulate the licensing of dispensaries and cultivation facilities; providing that there shall be at least 20 but not more than 40 dispensary licenses issued and that there shall be at least four but not more than eight cultivation facility licenses issued; setting initial maximum application fees for dispensaries and cultivation facilities; establishing qualifications for registry identification cards; establishing standards to ensure that qualifying patient

registration information is treated as confidential; directing the Department of Health to provide the General Assembly annual quantitative reports about the medical marijuana program; setting certain limitations on the use of medical marijuana by qualifying patients; establishing an affirmative defense for the medical use of marijuana; establishing registration and operation requirements for dispensaries and cultivation facilities; setting limits on the amount of marijuana a dispensary may cultivate and the amount of marijuana a dispensary may dispense to a qualifying patient; providing that the Medical Marijuana Commission shall determine the amount of marijuana a cultivation facility may cultivate; prohibiting certain conduct by and imposing certain conditions and requirements on physicians, dispensaries, dispensary and cultivation facility agents, and qualifying patients; establishing a list of felony offenses which preclude certain types of participation in the medical marijuana program; providing that the sale of useable marijuana is subject to all state and local sales taxes; providing that the state sales tax revenue shall be distributed 5% to the Department of Health, 2% to the Alcoholic Beverage Control Administration Division, 2% to the Alcoholic Beverage Control Enforcement Division, 1% to the Medical Marijuana Commission, 10% to the Skills Development Fund, 50% to the Vocational and Technical Training Special Revenue Fund, and 30% to the General Revenue Fund; and permitting the General Assembly by two-thirds vote to amend sections of the amendment, except that the General Assembly may not amend the sections legalizing the medical use of marijuana and setting the number of dispensaries or cultivation facilities allowed.

On September 6, 2016, the petitioner filed in this court an original–action complaint alleging that the ballot title of the proposed amendment contains misleading statements and omits material information that is essential for a fair understanding of the amendment. Specifically, the petitioner asserts (1) that the ballot title falsely informs the voters that the amendment places limitations on the use of medical marijuana by qualifying patients; (2) that it fails to advise the voters that the amendment permits marijuana dispensaries to sell food and drink that contain marijuana; (3) that the ballot title is incomplete and misleading with regard to the effect of the amendment on employers, landlords, churches, and schools; and (4) that it fails to inform the voters that the amendment prevents doctors, lawyers, and

SLIP OPINION

other professionals from being denied a license to practice their professions or from being disciplined for using medical marijuana.

In connection with the complaint, the petitioner filed motions for expedited consideration and for consecutive briefing. Couch moved to intervene, and he and the respondent filed answers to the complaint. This court granted the motion to intervene, set an expedited briefing schedule, and ordered consecutive briefing. With the briefing complete, we now decide the merits of the complaint.

We begin by reciting the familiar standards governing our review of ballot titles. The ballot title must be an impartial summary of the proposed amendment, and it must give the voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. *May v. Daniels*, 359 Ark. 100, 194 S.W.3d 771 (2004); *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996). A ballot title must be free of any misleading tendency whether by amplification, omission, or fallacy, and it must not be tinged with partisan coloring. *Parker v. Priest*, 326 Ark. 386, 931 S.W.2d 108 (1996); *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994). The ballot title need not contain a synopsis of the proposed amendment or cover every detail of it. *See Becker v. McCuen*, 303 Ark. 482, 798 S.W.2d 71 (1990); *Sturdy v. Hall*, 204 Ark. 785, 164 S.W.2d 884 (1942). However, if information omitted from the ballot title is an essential fact that would give the voter serious ground for reflection, it must be disclosed. *Walker v. McCuen*, 318 Ark. 508, 886 S.W.2d 577 (1994); *Page v. McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994). This court has long recognized the impossibility of preparing a ballot title that would suit everyone. *Cox v. Daniels*, 374 Ark. 437, 288 S.W.3d 591 (2008); *Hogan v. Hall*, 198 Ark. 681, 130 S.W.2d

716 (1939). Thus, the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. *Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000); *Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992).

The sufficiency of a ballot title is a matter of law to be decided by this court. *May*, *supra*; *Bailey*, *supra*. Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. *May*, *supra*; *Mason v. Jernigan*, 260 Ark. 385, 540 S.W.2d 851 (1976). However, this approach does not imply that liberality is boundless or that common sense is disregarded. *Christian Civil Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994); *Dust v. Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). In addition, when reviewing a challenge to a ballot title, this court recognizes that article 5, section 1 places the burden upon the party challenging the ballot title to prove that it is misleading or insufficient. *Richardson v. Martin*, 2014 Ark. 429, 444 S.W.3d 855; *Cox v. Martin*, 2012 Ark. 352, 423 S.W.3d 75.

Finally, we observe that it is not our purpose to examine the relative merit or fault of the proposed changes in the law; rather, our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. *Cox v. Daniels*, *supra*; *May*, *supra*. In other words, "[t]he question is not how the members of this court feel concerning the wisdom of this proposed amendment, but rather whether the requirements for submission of the proposal to the voters has been met." *Ferstl v. McCuen*, 296 Ark. 504, 509, 758 S.W.2d 398, 401 (1988).

Generally speaking, the proposed amendment authorizes the use of marijuana for medical purposes. To be eligible, a person must receive a certification from a licensed Arkansas physician that he or she suffers from a qualifying condition. The proposal lists eighteen qualifying medical conditions and authorizes the Arkansas Department of Health to add other medical conditions to the list. A qualifying patient must present the physician's certification to the Department of Health, which then issues a registry identification card to the patient. As a cardholder, the patient is entitled to obtain marijuana from a dispensary that is authorized to cultivate and sell marijuana. Marijuana may also be grown at a cultivation facility, which may sell marijuana to dispensaries. The proposed amendment also creates a Medical Marijuana Commission to license dispensaries and cultivation facilities. The Alcoholic Beverage Control Division is to administer and enforce the provisions of the amendment concerning dispensaries and cultivation facilities. In addition, certain qualifying patients may designate "caregivers" to assist them in the use of marijuana.

This court recently addressed a ballot-title challenge to the initiated measure popularly referred to as The Arkansas Medical Cannabis Act (Act), which is also set to be on the ballot at the November election. *Conway v. Martin*, 2016 Ark. 322, ___ S.W.3d ___. The Act and the amendment presently under consideration both purport to legalize the use of marijuana for medicinal purposes, and they have a number of provisions in common. Where the two proposals converge, the wording of the respective ballot titles is virtually identical. The petitioner in *Conway* also raised the first three issues presented here, and we determined that they were without merit. Because our decision in *Conway* is controlling on these points, we reach the same result here.

The petitioner's fourth and final argument focuses on the ballot title's statement "that qualifying patients . . . shall not be subject to criminal or civil penalties or other forms of discrimination for engaging in . . . medical use of marijuana." She contends that the word "discrimination" is insufficient and misleading when compared to the effect of the amendment on doctors, lawyers, and other licensed professionals and on people who use their services. The petitioner notes that section 3(a) of the amendment provides in relevant part that "[a] qualifying patient . . . shall not be subject to . . . penalty in any manner or denied any right or privilege, including . . . disciplinary action by a business, occupational, or professional licensing board or bureau, for the medical use of marijuana." Her argument is that the ballot title fails to inform the voters that the amendment prevents doctors, lawyers, and other professionals from being denied a license to practice or from being disciplined for using medical marijuana.

In addition, the petitioner observes that the amendment states that it "does not require [a]n employer to accommodate the ingestion of marijuana in a workplace or an employee working while under the influence of marijuana." Section 6(b)(2). She asserts that this language would permit, but not require, employers to prohibit their employees from using marijuana at work or from working while under the influence of marijuana. Further, the petitioner points out that the amendment also states that it "does not permit a person to [u]ndertake any task under the influence of marijuana when doing so would constitute negligence or medical malpractice." Section 6(a)(1). She argues that the clear implication of this provision is that marijuana users are permitted to be influenced by marijuana, so long as they do not commit negligent or wrongful acts.

SLIP OPINION

In sum, the petitioner maintains that the ballot title is insufficient and misleading for omitting these matters, which she contends would, if disclosed, give the voters serious ground for reflection. We disagree. In fact, the ballot title informs the voters that certain persons will not be subject to "forms of discrimination" for engaging in the medical use of marijuana. As we noted above, a ballot title need not contain a synopsis of the proposed amendment or cover every detail of it. *See Becker*, *supra*; *Sturdy*, *supra*. It is enough for the ballot title to impart a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. *May*, *supra*. Moreover, in large part, the petitioner's arguments call for an interpretation of the amendment. However, this court does not interpret a proposed amendment or discuss its merits or faults. *Richardson*, *supra*; *Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002). For these reasons, we find no merit in the petitioner's arguments.

We conclude that while inside the voting booth, the voters will be able to reach an intelligent and informed decision for or against The Arkansas Medical Marijuana Amendment of 2016. Therefore, we deny the petition.

Petition denied.

*Friday, Eldredge & Clark, LLP*, by: *Robert S. Shafer* and *Phillip M. Brick, Jr.*, for petitioners.

*AJ Kelly*, Deputy Secretary of State and General Counsel, and *Michael Fincher*, Associate General Counsel, for respondent.

*David A. Couch*, for intervenor.