RHONDA K. WOOD, Associate Justice
Petitioners Judith Stiritz, Billy Carroll Wheeler, Kenneth Ray Carney, and Bobby Gene Smith, individually and on behalf of Ensuring Arkansas' Future, filed this original action seeking to enjoin the Secretary of State Mark Martin from placing Issue Number 4, a proposed constitutional amendment concerning casino gambling, on the ballot for the general election on November 6, 2018. Petitioners claim that the proposed amendment's popular name and ballot title are insufficient. With our consent, Don Tilton, individually and on behalf of Arkansas Jobs Coalition, has intervened in support of the proposed amendment. Because we conclude that the popular name and ballot title are sufficient, we deny the petition.
Arkansas's Attorney General certified this proposed amendment's popular name and ballot title on May 23, 2018. The Secretary of State certified the sufficiency of the proposed initiative measure on September 5, 2018. As certified, the popular name of the proposed amendment is:
An Amendment to Require Four Licenses to be Issued for Casino Gaming at Casinos, One Each in Crittenden (to Southland Racing Corporation), Garland (to Oaklawn Jockey Club, Inc.), Pope, and Jefferson Counties.
The complete text of the ballot title, as certified, is appended to this opinion. On September 12, 2018, petitioners filed this original action. This court has jurisdiction under both Amendment 7 as codified in article 5, section 1 of the Arkansas Constitution and Arkansas Supreme Court Rule 6-5(a).
Petitioners raised twenty-seven challenges to the proposed amendment. Three challenges pertain to the popular name and twenty-four concern the ballot title. This court reviewed and considered each challenge; however, many of them necessitate no analysis in this opinion because they were wholly unsupported by any factual or legal argument. We have frequently stated that we will not research or develop arguments for petitioners. City of Greenbrier v. Roberts , 354 Ark. 591, 127 S.W.3d 454 (2003). Accordingly, we limit our discussion below to those arguments adequately presented to our court.
*527 I. Popular Name
We first consider the challenges to the popular name of the proposed amendment. The purpose of an amendment's popular name is "to identify the proposal for discussion prior to the election." May v. Daniels , 359 Ark. 100, 104, 194 S.W.3d 771, 776 (2004). It is "primarily a useful legislative device that need not contain the same detailed information or include exceptions that might be required of a ballot title." Id. It must not be misleading; it must be intelligible, honest, and impartial. Id. While it cannot contain catchphrases or slogans that may mislead or give partisan coloring, it is not held to the same stringent standards as the ballot title. Id. ; see also Ark. Women's Political Caucus v. Riviere , 283 Ark. 463, 677 S.W.2d 846 (1984).
Petitioners first argue that the popular name is insufficient because it designates Southland Racing Corporation and Oaklawn Jockey Club, Inc., as two entities that will receive a casino license, but the amendment's text does not specifically name those corporations. Petitioners contend this omits pertinent information and is misleading. As it is undisputed that Oaklawn and Southland are the only franchise holders that meet the description contained in the amendment, we find that it is informative, not misleading.
Petitioners also assert that the popular name suggests that the Arkansas Racing Commission must issue four casino licenses, one in each of the four counties. They argue this is misleading since the amendment provides that for a casino to receive a license in Pope and Jefferson Counties, the casino applicant will have to meet certain requirements. Therefore, the possibility exists that the Commission could not issue four casino licenses. We conclude that this is not misleading. A popular name need not identify all future scenarios. "[B]ecause so little is required of a popular name, we have never held a proposed measure invalid solely because of an incomplete description of the act by the popular name." Gaines v. McCuen , 296 Ark. 513, 516, 758 S.W.2d 403, 404-05 (1988). The popular name is an identification tool and simply cannot explain every eventuality of the actual amendment.
II. Ballot Title
This court decides the sufficiency of the ballot title as a matter of law. Wilson v. Martin , 2016 Ark. 334, 500 S.W.3d 160. The ballot title (1) must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law; (2) cannot omit material information that would give the voter serious ground for reflection; and (3) must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. Parker v. Priest , 326 Ark. 123, 930 S.W.2d 322 (1996). The ballot title need not contain a synopsis of the proposed amendment or cover every detail of it. Rose v. Martin , 2016 Ark. 339, at 4, 500 S.W.3d 148, 151. If information omitted from the ballot title is an essential fact that would give the voter serious ground for reflection, it must be disclosed. Id. , 500 S.W.3d at 152.
A. Lack of Definitions and Misleading Terms
Petitioners argue that the ballot title fails to define key terms for the voter and that certain terms are misleading. They first argue that of the eleven terms defined in the amendment's text, only two-casino gaming and net casino-gaming receipts-are defined in the ballot title. Our court has disapproved of undefined *528 terms in a ballot title that are highly technical, obscure, that attempt to mislead voters, or that hide the actual nature of the proposal. See Christian Civic Action Comm. v. McCuen , 318 Ark. 241, 884 S.W.2d 605 (1994). However, a term's definition need not appear in the ballot title if it is readily understandable. See id. We have previously held that terms such as state lottery, charitable bingo game, and charitable raffle do not require a definition. Id. ; see also Cox v. Daniels , 374 Ark. 437, 288 S.W.3d 591 (2008) (holding that omitting a definition of "state lottery" did not make the ballot title misleading or insufficient). Here, the terms that the petitioners object to being undefined in the ballot title include casino, franchise holder, intoxicating liquor, net casino gaming receipts, sporting events, and wholesaler. We do not find these terms obscure or highly technical. They do not require definitions in order for voters to understand this amendment's scope and import; therefore, voters are not misled by their omission.
Similarly, petitioners claim that the term "casino gaming" is incomplete and misleading because it fails to state that lotteries are excluded from the definition. However, "casino gaming" is defined in the ballot title as gambling "with cards, dice, equipment, or any mechanical, electromechanical, or electronic device or machine ... as well as accepting wagers on sporting events." This mirrors the definition contained in the amendment, and we find it to be a common appellation. In Parker , we concluded that voters could readily understand terms such as "state lottery" and "casino gambling." 326 Ark. 123, 930 S.W.2d 322. Likewise, because we assume that voters can readily differentiate these two terms, we find that voters will not be misled. Again, a ballot title is not "required to include every detail, term, definition, or how the law may work." Cox v. Martin , 2012 Ark. 352, at 9, 423 S.W.3d 75, 83.
Finally, as in the popular-name challenge, petitioners argue that the ballot title is misleading because it states that the Commission is "required" to issue four casino licenses. Certainly, the amendment places requirements on casino applicants in Pope and Jefferson Counties that, if not met, could result in the Commission's not issuing four licenses. We reject this argument because the ballot title explains this process and the requirements for applicants, and voters generally understand that the issuance of a license is contingent upon the applicant's satisfying those requirements.
B. Omission of Key Words and Phrases
Petitioners also contend that the ballot title is legally insufficient because it omits key words and phrases. They first assert that the ballot title omits the term "gross" from the definition of "net casino gaming receipts." We conclude that this omission is not misleading. The ballot title defines "net casino gaming receipts" as "gaming receipts less amounts paid out or reserved as winnings to casino patrons." The omission of the term "gross" detracts nothing from the definition since "net" and "gross" are commonly understood terms.
Petitioners also claim that the ballot title is misleading because it fails to disclose that the amendment obligates the Arkansas Racing Commission, with the assistance of the Arkansas Department of Human Services, to conduct and fund compulsive-gambling-disorder treatment and educational programs. Again, a ballot title cannot include every detail of an amendment. Our ultimate inquiry is "whether a voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or *529 her vote based on the ballot title." Cox , 374 Ark. 437, 443, 288 S.W.3d 591, 595 (2008). Here, the ballot title provides the purpose and scope of the amendment. It conveys sufficient information upon which voters can step into the voting booth, read the title, and make an informed decision. Ultimately, we do not find that the omission of this provision is "an essential fact that would give the voter serious ground for reflection." Rose , 2016 Ark. 339, at 5, 500 S.W.3d at 152.
C. Omission of Changes in the Law and Impact of the Amendment
Petitioners also argue that the ballot title fails to inform voters of various conceivable eventualities, such as how the amendment will impact certain laws or how future events may impact the amendment. For example, they claim that the ballot title does not reveal that the amendment changes Arkansas laws regarding who may be a franchise holder. Similarly, they argue that the ballot title fails to inform voters (1) that Southland and Oaklawn could transfer their licenses, (2) that the casinos may not be located in Pine Bluff or Russellville if those cities are no longer the county seats, and (3) what would happen to the 17.5 percent of revenues designated for funding racing purses if the franchise holders stop offering races.
This court has repeatedly stated that a ballot title does not need to include every possible consequence or impact of a proposed measure, and it does not need to address or anticipate every possible legal issue. Conway v. Martin , 2016 Ark. 322, 499 S.W.3d 209. A ballot title is not required to state "every detail of an amendment or how it will work in every situation." Richardson v. Martin , 2014 Ark. 429, at 11, 444 S.W.3d 855, 862 (quoting Ferstl v. McCuen , 296 Ark. 504, 758 S.W.2d 398 (1988) ). The ballot title also is not required to account for every possible occurrence that might impose some effect upon the amendment's operation, particularly those that are speculative. Consequently, we conclude that this ballot title sufficiently informs the public of the amendment's purpose and scope and its consequences.
Because we find that all of petitioners' arguments fail, we deny the petition. We order the mandate to issue within five days from the filing of this opinion unless a petition for rehearing is filed.
Petition denied.
Special Justice Hugh Finkelstein joins in this opinion.
Hart, J., dissents.
Kemp, C.J., not participating.
ADDENDUM
(Ballot Title)
An amendment to the Arkansas Constitution to require that the Arkansas Racing Commission issue licenses for casino gaming to be conducted at four casinos in Arkansas, being subject to laws enacted by the General Assembly in accord with this amendment and regulations issued by the Arkansas Racing Commission ("Commission"); defining "casino gaming" as dealing, operating, carrying on, conducting, maintaining, or exposing for play any game played with cards, dice, equipment, or any mechanical, electromechanical, or electronic device or machine for money, property, checks, credit, or any representative value, as well as accepting wagers on sporting events; providing that individuals under 21 are prohibited from engaging in casino gaming; providing that the Commission shall issue four casino licenses, one to Southland Racing Corporation ("Southland") for casino gaming at a casino to be *530 located at or adjacent to Southland's greyhound track and gaming facility in Crittenden County, one to Oaklawn Jockey Club, Inc. ("Oaklawn") to require casino gaming at a casino to be located at or adjacent to Oaklawn's horse track and gaming facility in Garland County, one to an applicant to require casino gaming at a casino to be located in Pope County within two miles of Russellville, and one to an applicant to require casino gaming at a casino to be located in Jefferson County within two miles of Pine Bluff; providing that upon receiving a casino license, licensees will be required to conduct casino gaming for as long as they have a casino license providing that Southland and Oaklawn do not have to apply for a license and will automatically receive a casino license upon the Commission adopting rules and regulations to govern casino gaming; providing that the Commission shall require all applicants for the two remaining casino licensees, one in Pope County and one in Jefferson County to pay an application fee, demonstrate experience in conducting casino gaming, and submit either a letter of support from the county judge or a resolution from the county quorum court in the county where the casino would be located and, if the proposed casino is to be located within a city, a letter of support from the mayor of that city; providing that the Commission shall regulate all casino licensees; defining "net casino gaming receipts" as casino gaming receipts less amounts paid out or reserved as winnings to casino patrons; providing that for each fiscal year, a casino licensee's net casino gaming receipts are subject to a net casino gaming receipts tax of 13% on the first $150,000,000 of net casino gaming receipts or any part thereof, and 20% on net casino gaming receipts exceeding $150,000,001 or any part thereof; providing that no other tax, other than the net casino gaming receipts tax, may be imposed on gaming receipts or net casino gaming receipts; providing that the net casino gaming receipts tax shall be distributed 55% to the State of Arkansas General Revenue Fund, 17.5% to the Commission for deposit into the Arkansas Racing Commission Purse and Awards Fund to be used only for purses for live horse racing and greyhound racing by Oaklawn and Southland, as the case may be, 8% to the county in which the casino is located, and 19.5% to the city in which the casino is located, provided that if the casino is not located within a city, then the county in which the casino is located shall receive the 19.5%; permitting casino licensees to conduct casino gaming on any day for any portion of all of any day; permitting casino licensees to sell liquor or provide complimentary servings of liquor during all hours in which the casino licensees conduct casino gaming only for on-premises consumption at the casinos and permitting casino licensees to sell liquor or provide complimentary servings of liquor without allowing the residents of a dry county or city to vote to approve the sale of liquor; providing that casino licensees shall purchase liquor from a licensed Arkansas wholesaler; permitting shipments of gambling devices that are duly registered, recorded, and labeled in accordance with federal law into any county in which casino gaming is authorized; declaring that all constitutional provisions, statutes, and common law of the state that conflict with this amendment are not to be applied to this Amendment.
I agree with the majority's conclusion that there is no fatal infirmity with the popular name of Issue No. 4. However, the ballot title tends to mislead, rather than clearly inform, the voter of the issue presented and likewise fails to adequately convey the scope and import of the proposed *531 amendment. Accordingly, Issue No. 4 should be struck from the ballot.
Our standards for reviewing the language of a ballot title require that a ballot title (1) be free from any misleading tendency; (2) inform the voters with such clarity so that they can cast their ballots with a fair understanding of the issue presented; and (3) convey an intelligible idea of the scope and import of the proposal. Bailey v. McCuen , 318 Ark. 277, 284, 884 S.W.2d 938, 942 (1994). Issue No. 4 is a massive constitutional amendment even by Arkansas standards-3104 words. Accordingly, it should surprise no one that the 707-word ballot title contains material omissions.
While I address only four issues, the petitioner asserts that the ballot title is infirm for twenty-four reasons. Because they are not individually addressed by the majority, I have listed the headings of these points in the addendum to this dissent. In my view, the ballot title in Issue No. 4 is infirm because:
(1) it fails to disclose to the voter that the amendment creates major social-welfare programs for problem gamblers, tasks the Arkansas Department of Human Services with working with the Arkansas Racing Commission "to implement the compulsive gambling disorder treatment programs and the compulsive gambling disorder educational programs," and levies a meager contribution of "at least $200,000 on the Arkansas Racing Commission for these treatment and education programs (see # 19);
(2) it is inherently misleading because it fails to inform the voter that the amendment unleashes a powerful casino industry in this state without oversight-while it mentions that the Racing Commission has control over the issuing licenses, it does not provide for day-to-day monitoring the way the state lottery commission overseas the Arkansas Scholarship Lottery (see # 9);
(3) it does not adequately inform the voters, particularly in Pope County, which is a "dry" county, that the amendment effectively hijacks state liquor laws as they apply to casinos (see # 22);
(4) it omits an explanation of the role of "sports betting" at the casinos (see # 3). While it is true that not every term need be defined, important terms must be or the measure will be struck from the ballot. Wilson v. Martin , 2016 Ark. 334, 500 S.W.3d 160. Sports betting is just such a term. It is not a traditional casino offering like blackjack, craps, or slot machines-it creates a legal book-making operation in four locations in this state where a gambler can bet, certainly on the Razorbacks, and possibly even on the local high school game. The Supreme Court's decision in Murphy v. National Collegiate Athletic Ass'n , --- U.S. ----, 138 S.Ct. 1461 [200 L.Ed.2d 854] (May 14, 2018) makes it very clear that sports betting is exclusively a matter of state law, and if Issue No. 4 passes, unimpeded sports betting will be the law in Arkansas.
"Ballot titles must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law." Parker v. Priest , 326 Ark. 123, 129, 930 S.W.2d 322, 325 (1996). The ballot title in the case before us fails to meet this standard.
I respectfully dissent.
ADDENDUM
(1) The ballot title is misleading in stating that the Commission is "required" to issue four casino licenses "being subject *532 to" laws to be enacted by the legislature and to regulations issued by the Arkansas Racing Commission.
(2) Of the eleven definitions contained in § 2 of the Amendment's text, only two (casino gaming and net casino gaming receipts) are revealed, albeit partially, in the ballot title.
(3) The ballot title's reference to the definition of "casino gaming" is incomplete and misleading.
(4) In partially reciting the definition of "net casino gaming receipts," the ballot title omits the word "gross" from the Amendment's definition in the text.
(5) The ballot title uses the term "liquor" instead of the defined term "intoxicating liquor" as found in the Amendment's text, and no explanation is given for "liquor."
(6) The ballot title uses the term "licensed Arkansas wholesaler" instead of the defined term "wholesaler" as found in the Amendment's text, and the ballot title does not explain what is meant by "licensed Arkansas wholesaler."
(7) The Amendment's defined term "Franchise holder" is not revealed in the ballot title and the ballot title does not reveal that the Amendment would change Arkansas law by allowing the Franchise holders to be an individual, partnership, association, trust or other entity, instead of restricting a Franchise holder to being a corporation as provided by existing law.
(8) The ballot title fails to reveal that the Amendment's § 3(c) directs the legislature to enact laws and appropriate monies to fulfill the purposes of this Amendment.
(9) The ballot title fails to reveal that the Arkansas Racing Commission, while authorized to regulate casino licenses, is not authorized by the Amendment to regulate all casino operations.
(10) The ballot title fails to reveal the content of the Amendment's § 4(b) and 4(d) through (h), which set out numerous material provisions such as the thirteen subjects for the Arkansas Racing Commission's rulemaking; the requirements for casino license applications; and the requirements to qualify as a casino licensee.
(11) The Amendment's § 4(j) "requires the Commission to issue a license to the "Franchise holder" in Crittenden and Garland Counties (with the designation "there being only one"), but § 4(j) does not name Southland Racing Corporation and Oaklawn Jockey Club, Inc. as the Franchise holders. By contrast, the ballot title identifies the two entities by name, but does not explain that they are Franchise holders.
(12) The ballot title states that "Southland and Oaklawn do not have to apply for a license" but the ballot title does not reveal that those corporations are not considered "applicants" and that the Amendment fails to impose on those corporations any requirements to obtain a license, other than qualifying as a Franchise holder. Also, the ballot title does not reveal if those corporations will be subject to, or exempt from, the rules adopted by the Arkansas Racing Commission, or, if the rules are applicable, whether such corporations could have their casino licenses suspended or terminated as provided in the Amendment's § 4(e)(8).
(13) The ballot title does not reveal that Southland Racing Corporation and Oaklawn Jockey Club, Inc., pursuant to the Amendment's § 4(e)(12), could transfer its casino license to any party who has casino gaming experience, even if the party to whom the transfer is made is not a Franchise holder that operates a race track.
*533 (14) The ballot title states that Southland Racing Corporation and Oaklawn Jockey Club, Inc. are to be granted casino licenses "upon the Commission adopting rules and regulations to govern casino gaming." However, the Amendment's § 4(j)(1) and (2) conditions the license issuance on both adoption of the rules and upon "initial laws and appropriations required by this Amendment being in full force and effect."
(15) The ballot title says that licenses will be granted for a casino to be located within two miles of Russellville and within two miles of Pine Bluff, but the Amendment's § 4 (k) refers to the casinos being located within 2 miles of the city limits of the county seats in Pope and Jefferson counties. Thus, the ballot title communicates to the voters an assumption that the county seats of Pope and Jefferson Counties will always be Russellville and Pine Bluff.
(16) The ballot title fails to reveal that under the Amendment, so long as the racing Franchise holder continues to be one, then it would possess, by operation of the amendment, a casino license and have to offer casino gaming in perpetuity whether it wanted to or not, or whether it had the financial ability to do so.
(17) The ballot title fails to disclose that one entity may not hold more than one casino license, but affiliates of a licensee are not barred from holding another license, pursuant to the Amendment's § 4(p).
(18) The ballot title fails to disclose that a casino license has a duration of ten years unless renewed by the Arkansas Racing Commission and also fails to disclose if the licenses originally granted "automatically" are to be "automatically" renewed every ten years.
(19) The ballot title fails to disclose the provisions in the Amendment's § 4(r)(1) through (4) that impose on the Arkansas Racing Commission and the Department of Human Services obligations to conduct and fund compulsive gambling disorder treatment and educational programs.
(20) The ballot title fails to disclose the provisions in the Amendment's § 5(d) pertaining to how and when the State Treasurer will transfer the 17.5% of revenues derived by the taxes levied under the Amendment to the Arkansas Racing Commission to be distributed to the Franchise holders to fund racing purses. More importantly, both the Amendment's text and ballot title fail to address the allocation and use of the 17.5% of revenues derived from taxes levied under the Amendment if one or both Franchise holders were to no longer offer horse or dog racing and thus cease to exist as Franchise holders.
(21) The ballot title fails to disclose the provisions in the Amendment's § 6(a) through (f), entitled "Contribution to purses and promotion of Arkansas thoroughbred and greyhound breeding activities." The ballot title thus fails to reveal the impact of the Amendment on the use of net gaming receipts on purses and capital improvements at the race tracks and on activities of the Arkansas Racing Commission. Additionally, the ballot title fails to reveal that the racing Franchise holders could offer casino gaming even if no longer offering horse and dog racing. In that event, the set aside and allocation by Franchise holders of specified net casino gaming receipts to fund racing purses, capital improvements and certain breeding and other activities of the Arkansas Racing Commission would have no application.
(22) The ballot title fails to disclose the provisions in the Amendment's § 7(b) that casino licensees shall not be subject to Ark. Code Ann. § 3-3-211, which prohibits *534 the sale of intoxicating liquor on Christmas Day, and that Arkansas laws involving the distribution and sale of intoxicating liquor shall not apply to casino licensees if those laws conflict with the Amendment.
(23) The ballot title fails to disclose the provisions in the Amendment's § 9(b) to the effect that this Amendment does not amend, repeal or affect the constitutional provisions authorizing lotteries and raffles or creating a lottery and the statutes permitting electronic games of skill.
(24) The ballot title inadequately describes the provisions in the Amendment's § 10 dealing with "Inconsistent provisions inapplicable."